### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| **DOUGLAS PATTERSON, Individually, and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(b)** | |
| *Plaintiffs,* | |
| **v.** | **Case No.: 3:18-cv-00307-N** |
| **DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD** | |
| *Defendant.* | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

PAGE

I.   SUMMARY ............................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 2

     A.   Structure of DFW's Department of Public Safety ................................ 2

     B.   Plaintiffs are certified by the State of Texas as firefighters and that
          certification is required for their employment in the DPS ..................... 3

     C.   Plaintiffs' fire suppression training ...................................................... 6

     D.   Plaintiffs' legal authority and responsibility to engage in fire suppression ........ 11

          1.   Plaintiffs' oath, Texas law, statutory authorities, and DFW policies
               reflect Plaintiffs' legal authority and responsibility to engage in
               fire suppression ....................................................................... 11

          2.   Plaintiffs' training and dispatch calls reflect Plaintiffs' legal
               authority and responsibility to engage in fire suppression ...................... 13

          3.   Plaintiffs' firefighting equipment reflects Plaintiffs' responsibility
               to engage in fire suppression ..................................................... 16

          4.   Plaintiffs' work across the Fire Services division reflects Plaintiffs'
               legal authority and responsibility to engage in fire suppression .............. 19

     E.   Plaintiffs' schedules and compensation ............................................... 21

III. ARGUMENT AND AUTHORITIES ......................................................... 22

     A.   The § 207(k) partial exemption and Congress's amendment of the FLSA
          to clarify that § 207(k) is applicable to Plaintiffs. ................................ 22

          1.   Under § 207k, employees engaged in fire protection who work a
               regularly recurring 28-day work period must work more than 212
               hours before they are entitled to overtime ............................... 22

          2.   The partial overtime exemption of § 207(k) was expanded by
               Congress to make § 207(k) more broadly applicable .............................. 24

     B.   Plaintiffs are employees engaged in fire protection activities as defined by
          § 203(y) and therefore fall within the partial overtime exemption of §
          207(k) ................................................................................................. 27

          1.   Plaintiffs are trained in fire suppression ................................. 27

TABLE OF CONTENTS
(CONTINUED)

PAGE

      2.     Plaintiffs have the legal authority and responsibility to engage in fire suppression .......................................................................... 30

      3.     Plaintiffs are employed by a fire department of a municipality, county, fire district, or state, and respond to emergency situations where life, property or the environment is at risk .................................. 36

   C.    Alternatively, as a matter of law, a two-year statute of limitations applies because Plaintiffs cannot prove that DFW willfully violated the FLSA ............. 38

   D.    Alternatively, as a matter of law, Plaintiffs cannot recover liquidated damages because DFW acted in good faith ........................................................ 39

IV.   CONCLUSION ........................................................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. City of Texas City*,
 No. G-10-176, 2012 U.S. Dist. LEXIS 30308 (S.D. Tex. Mar. 6, 2012) ...............................28

*Huff v. Dekalb County*,
 516 F.3d 1273 (11th Cir. 2008) ............................................................................................31

*Huff v. Dekalb County*,
 No. 1:05-cv-1721-WSD, 2007 U.S. Dist. LEXIS 6398 (N.D. Ga. Jan. 30,
 2007) ......................................................................................................................................29

*Kipple v. Monroe County*,
 847 F. Supp. 2d 471 (W.D.N.Y. 2012) ..................................................................................36

*Lang v. City of Omaha*,
 186 F.3d 1035 (8th Cir. 1999) .............................................................30, 31, 32, 35, 36

*Lee v. Coahoma County*,
 937 F.2d 220 (5th Cir. 1991) ..........................................................................................23, 36

*McGavock v. City of Water Valley*,
 452 F.3d 423 (5th Cir. 2006) ........................................................................................ *passim*

*McLaughlin v. Richland Shoe Co.*,
 486 U.S. 128 (1988)...............................................................................................................38

*Rodriguez v. Tarland, LLC*,
 No. 3:18-CV-00088-E, 2019 U.S. Dist. LEXIS 211080 (N.D. Tex. Dec. 6,
 2019) ......................................................................................................................................22

*Schneider v. City of Springfield*,
 No. C-3-96-62, 2000 U.S. Dist. LEXIS 6217 (S.D. Ohio Mar. 30, 2000) .............................39

*Vela v. City of Houston*,
 276 F.3d 657 (5th Cir. 2001) ............................................................................................24, 25

**Statutes**

29 U.S.C. § 203(y) ........................................................................................................ *passim*

29 U.S.C. § 207(a) ..................................................................................................................22

29 U.S.C. § 207(k) ........................................................................................................ *passim*

29 U.S.C. § 260 ..................................................................................................39

37 Tex. Admin Code § 423.1 ...............................................................................8

37 Tex. Admin. Code § 423.3 ........................................................................8, 29

37 Tex. Admin. Code § 423.201 ..........................................................................9

37 Tex. Admin. Code § 423.203 ....................................................................9, 29

37 Tex. Admin. Code § 435.3 .............................................................................18

Tex. Gov't Code § 419.001 *et seq.* ....................................................................28

Tex. Gov't Code § 419.022 ................................................................................11

Tex. Transp. Code § 22.002 .................................................................................2

Tex. Transp. Code § 22.074 .................................................................................2

**Other Authorities**

29 C.F.R. § 553.224(a)........................................................................................23

29 C.F.R. § 553.230(a)........................................................................................23

U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter FLSA2005-9NA
(Sept. 9, 2005)............................................................................................26, 29

U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter FLSA2009-19
(Jan. 16, 2009)............................................................................................29, 36

Defendant Dallas/Fort Worth International Airport Board ("DFW") files this Brief in Support of its Motion for Summary Judgment and shows:

## I.     SUMMARY

Summary judgment in favor of DFW is proper because § 207(k) of the Fair Labor Standards Act (FLSA) applies to firefighters *and paramedics* at a municipal fire department (*i.e.*, Plaintiffs). Because § 207(k) applies to Plaintiffs, they are not entitled to the additional overtime pay that they seek and their lawsuit fails as a matter of law.

Due to the nature of emergency service work, which does not fit into a forty-hour work week, Congress enacted § 207(k). Specifically, Congress made clear under § 207(k) that firefighters, paramedics, and other emergency responder employees employed by public agencies are partially exempt from overtime provisions when they (1) are trained in fire suppression; (2) have the legal authority and responsibility to engage in fire suppression; and (3) respond to emergency situations where life, property, or the environment are at risk.

Plaintiffs admit they are certified firefighters but dispute that § 207(k) applies to them while performing paramedic job duties. Plaintiffs' argument is not supported by evidence and binding case law, which makes clear that Plaintiffs fall within § 207(k) even while performing paramedic duties because they (1) are trained in fire suppression; (2) have the legal authority and responsibility to engage in fire suppression; and (3) respond to emergency situations where life, property, or the environment are at risk. Indeed, § 207(k) applies *regardless* of whether they ever actually engage in fire suppression.

Plaintiffs admit they obtained firefighting certifications from the Texas Commission on Fire Protection (TCFP) – many Plaintiffs were certified as a result of attending fire academy training paid for by DFW. Plaintiffs further admit that they <u>must</u> maintain their TCFP

1

certifications, they regularly receive training in fire suppression (provided by DFW at its expense), and DFW and state law legally authorize Plaintiffs to engage in fire suppression. Plaintiffs received additional training, and many are certified in additional firefighting areas, beyond the minimum required to be considered "trained in fire suppression" or to legally authorize them to engage in fire suppression. Plaintiffs admit they respond to emergency situations where life, property, and/or the environment are at risk – and were provided (at DFW's expense) personal protective equipment by DFW that protects them from fire. Despite overwhelming evidence that § 207(k) applies to Plaintiffs, some of them deny that they have the legal authority and responsibility to suppress fire. Plaintiffs' self-serving denials are wholly unsupported by the evidence of record and should not be relied upon to preclude summary judgment.

Plaintiffs are firefighters and/or paramedics under the § 207(k) exemption, which renders summary judgment appropriate to dismiss Plaintiffs' lawsuit.

## II.   STATEMENT OF FACTS

### A.   Structure of DFW's Department of Public Safety.

DFW is a joint board of the Cities of Dallas and Fort Worth, created by contract between them pursuant to the Texas Municipal Airports Act (now Texas Transportation Code Chapter 22), to plan, acquire, establish, develop, construct, enlarge, improve, maintain, equip, operate, regulate, protect and police DFW Airport. § 22.074(b) of the Texas Transportation Code gives the board "all the powers" of the Cities of Dallas and Forth Worth with respect to DFW Airport. Ex. A at App. 01-02 (Constantine Decl.). The Texas Transportation Code § 22.002 declares the enumerated powers to be "public and governmental functions, exercised for a public purpose, and matters of public necessity." *Id.* It is the mission of DFW's Department of Public Safety (DPS) to provide the highest level of professional services through response and recovery from natural and

2

manmade events that threaten lives, critical assets, or business continuity. Ex. B at App. 07 (McKinney Decl.); Ex. B-1 at App. 10 (Organization and Mission of DPS).

DPS's two divisions are Police Services and Fire Services. Ex. A at App. 02 ¶7 (Constantine Decl.); Ex. B-1 at App. 10 (Organization and Mission of DPS). DPS's Fire Services employs Firefighters in four divisions: Fire Rescue, Emergency Medical Services (EMS), Career Development, and Fire Prevention & Planning.[1] Ex. B at App. 07 (McKinney Decl.); Ex. B-1 at App. 10 (Organization and Mission of DPS). Firefighters are supervised by Captains and Chiefs in the DPS. Ex. B-2 at App. 13 (Organizational Chart of DPS's Fire Services).

**B.    Plaintiffs are certified by the State of Texas as firefighters and that certification is required for their employment in the DPS.**

Plaintiffs are current or former Firefighters at DFW who worked in Fire Services's EMS division.[2] *See, e.g.*, Ex. Q at App. 705 (Patterson Dep. 24:8-23). Some of them transferred from another Fire Services division (*e.g.*, Fire Rescue) to EMS. *See, e.g.*, Ex. M at App. 602, 612 (Gaither Dep. 11:19-12:8; 79:1-4; 79:20-22); Ex. R at App. 729 (Posey Dep. 12:16-18); Ex. U at App. 792 (Schauer Dep. 70:1-10; 70:18-25).

At all times during their employment, Plaintiffs were required to be certified as firefighters. Ex. C at App. 59-60 ¶¶3-12 (Rhodes Decl.); Ex. F-1 at App. 277 (Job description for Firefighter); Ex. F-2 at App. 286 (Firefighter Recruit job description); Ex. I at App. 505-06 (Adams Dep. 36:24-

---

[1] The explanation of fire divisions is based on the organization structure at the time of the lawsuit. It will not surprise the Court that the structure of a fire department is re-organized from time to time. To the extent that DFW policies are applicable to "Fire Services," rather than the EMS or Fire Rescue Divisions separately, such policies are applicable to both divisions. Ex. B-1 at App. 10 (Organization and Mission of DPS); Ex. B-2 at App. 13 (Organizational Chart of DPS's Fire Services); Exs. F-21 – F-35 at App. 431-496 (Performance Evaluations for Plaintiffs, showing the division of Fire Services in which Plaintiffs worked).

[2] With the exception of Plaintiff Hill, who was promoted from firefighter to "Captain" in 2010. Ex. O at App. 658-9 (Hill Dep. 8:24-9:1).

37:21);[3] Ex. J at App. 529 (Bird Dep. 40:10-19);[4] Ex. L at App. 565-66 (Cowles Dep. 56:22-57:8);

Ex. M at App. 609 (Gaither Dep. 64:6-18); Ex. N at App. 633 (Harmon Dep. 52:15-18); Ex. P at

App. 691-92 (Musick Dep. 112:24-113:4); Ex. V at App. 830 (Thompson Dep. 72:15-24); Ex. S

at App. 743 (Ramirez Dep. 27:9-19); Ex. U at App. 787-88 (Schauer Dep. 52:12-53:12). That

certification—paid for by DFW—is a prerequisite to attain, and keep, the job. Ex. C at App. 59 ¶3

(Rhodes Decl.); Ex. F-1 at App. 277 (Job description for Firefighter); Ex. F-2 at App. 286

(Firefighter Recruit job description); Ex. I at App. 505-06 (Adams Dep. 36:24-40:2); Ex. J at

App. 529 (Bird Dep. 40:10-19); Ex. L at App. 529 (Cowles Dep. 56:22-57:8); Ex. M at App. 609

(Gaither Dep. 64:6-18); Ex. P at App. 691-92 (Musick Dep. 112:24-113:4); Ex. S at App. 743

(Ramirez Dep. 27:9-29:19); Ex. V at App. 810 (Thompson Dep. 31:2-17). As Plaintiff Bird

described, DFW requires Plaintiffs to be certified as firefighters "because there are [sic] a point in

time where if you are fighting fire that you have to be a commissioned firefighter with that kind

of certifications and that kind of training." Ex. J at App. 787-88 (Bird Dep. 40:13-19).

Upon applying to work for DFW's Fire Services, individuals can apply for two positions:

"Firefighter Recruit" or "Firefighter."[5] Exs. F-3-F-17 at App. 284-373 (Employment Applications

for Plaintiffs). The Firefighter position is for those with prior experience and firefighter

certifications; the Firefighter Recruit position is for those without such qualifications, and thus

**they are required to complete fire academy** training to become certified firefighters before being

---

[3] Ex. I at App. 506 (Adams Dep. 37:19-21) (*Q.* You can't work at DFW unless you're a certified firefighter, right? *A.* Yes.).

[4] Ex. J at App. 529 (Bird Dep. 40:10-19) (*Q.* What is your understanding of why you have to go through the fire academy in order to work in your position at DFW? *A.* That's part of the job – being offered the job, that **you have to be a certified firefighter**. *Q.* **Why** do you believe that is? *A.* **Because there are [sic] a point in time where if you are fighting fire that you have to be a commissioned firefighter with that kind of certifications and that kind of training**.) (emphasis added).

[5] On March 7, 2005, DPS divided into both Police Services and Fire Services divisions, and thus, Plaintiffs who applied for positions prior to that date applied as a Public Safety Officer or Public Safety Recruit. However, these job titles were subsequently changed to Firefighter and Firefighter Recruit.

eligible for promotion into the position of Firefighter. Ex. B at App. 8 ¶¶8-11 (McKinney Decl.); Ex. B-3 at App. 14 (DPS promotions and transfers policy). On Plaintiffs' employment applications, they stated whether they were applying for either the Firefighter Recruit or Firefighter positions. Ex. F (Malone, Jr. Decl.); Exs. F-3-F-17 at App. 284-373.[6] When Plaintiffs had the opportunity for promotions, they were eligible to be promoted within the EMS division, as well as the Fire Rescue division, or any other division within DFW's Fire Services. Ex. U at App. 793 (Schauer Dep. 83:4-14).

Plaintiffs also submitted a pre-employment questionnaire, which states that "[a]ll Department of Public Safety applicants must meet the minimum qualifications." Ex. V at App. 807 (Thompson Dep. 20:21-24). Among these minimum qualifications, Plaintiffs and all other applicants "[m]ust be willing to serve as a fire fighter/EMT or must be willing to serve as a police officer." *See e.g.,* Ex. V at App. 808-09 (Thompson Dep. 21:22-22:3). Plaintiffs filled out this questionnaire, recognized these requirements, and were willing to serve as firefighters. *Id.*

Plaintiffs Gaither, Posey, and Schauer worked in DFW's Fire Rescue division, before transferring to the EMS division – they admit that they had both the legal authority and responsibility to engage in fire suppression while working in Fire Rescue. Ex. M at App. 602-03, 612 (Gaither Dep. 11:19-12:8; 79:1-4; 79:20-22); Ex. R at App. 729 (Posey Dep. 12:16-13:19); Ex. U at App. 792 (Schauer Dep. 70:1-10; 70:18-25). Plaintiffs admit they work in different Fire Services divisions without any change to their job title or assigned firefighting equipment. Indeed, during their time in the EMS division, they were qualified, by virtue of their certifications and

---

[6] Plaintiff Harmon applied to DFW as a "Paramedic" but was ultimately hired as a Firefighter Recruit in May 2005. Ex. F-8 at App. 322 (Employment Application for Plaintiff Harmon). Likewise, Plaintiff Reeder applied to DFW as a "Police Recruit/DPS" but was hired as a "Public Safety Recruit," which was subject to the March 7, 2005 job title change to Firefighter Recruit. Ex. F-14 at App. 354 (Employment Application for Plaintiff Reeder).

training, to work in other Fire Services divisions in their same position as a Firefighter. Ex. U at App. 794 (Schauer Dep. 105:2-22).

### C.      Plaintiffs' fire suppression training.

Plaintiffs are fully trained in fire suppression and required to complete firefighting training courses to be legally certified as firefighters by the TCFP (to the extent not previously certified before employment with DFW). Ex. F-1 at App. 277 (Job Description for Firefighter); Ex. G at App. 497-98 ¶¶2-8 (Boyton Decl.); Ex. H at App. 499-500 ¶¶2-8 (Kurtulan Decl.); Ex. I at App. 505-09 (Adams Dep. 36:24-40:2); Ex. L at App. 565-66 (Cowles Dep. 56:22-57:8); Ex. V at App. 830 (Thompson Dep. 72:15-24). All Plaintiffs admit that they "received initial fire training." *See* Ex. X at App. 855-944 (Pls' Responses to Def's First Requests for Admission), at 1. Plaintiffs testified that they are trained in fire suppression. Ex. I at App. 515-16 (Adams Dep. 79:25-80:5); Ex. J at App. 537 (Bird Dep. 66:12-20); Ex. K at App. 556 (Brooks Dep. 73:19-20); Ex. P at App. 678 (Musick Dep. 25:14-16) Ex. S at App. 758 (Ramirez Dep. 61:8-9); Ex. T at App. 769-70 (Reeder Dep. 67:24-68:3); Ex. V at App. 830 (Thompson Dep. 72:15-24); Ex. W at App. 849 (Weber Dep. 67:3-6). Plaintiff Patterson testified that Fire Recruits, including himself, are trained in fire suppression. Ex. Q at App. 707 (Patterson Dep. 51:3-16). And Plaintiff Harmon testified that through her DFW training, she learned "how to suppress a fire." Ex. Nat App. 627-28 (Harmon Dep. 40:25-41:6).

Plaintiffs admit that they are certified as firefighters as a requirement for their employment at DFW. Ex. I at App. 505-06 (Adams Dep. 36:24-40:2); Ex. J at App. 529 (Bird Dep. 40:13-19); Ex. L at App. 565-66 (Cowles Dep. 56:22-57:8); Ex. M at App. 609 (Gaither Dep. 64:6-18); Ex. N at App. 633 (Harmon Dep. 52:15-18); Ex. P at App. 691-92 (Musick Dep. 112:24-113:4); Ex. S at App. 742 (Ramirez Dep. 26:6-8); Ex. U at App. 633 (Schauer Dep. 52:12-53:12); Ex. V at App. 830 (Thompson Dep. 72:15-24). If they were not previously certified as firefighters,

6

Plaintiffs enrolled and attended a full-time fire academy, which conforms to the basic fire suppression training required for certification as a firefighter by the TCFP. Ex. J at App. 526-27 (Bird Dep. 36:18-37:20); Ex. K at App. 547 (Brooks Dep. 40:1-41:15); Ex. M at App. 608-09 (Gaither Dep. 63:24-64:5); Ex. N at App. 622 (Harmon Dep. 30:14-21); Ex. Q at App. 707 (Patterson Dep. 51:10-16); Ex. S at App. 746 (Ramirez Dep. 33:8-12); Ex. V at App. 810 (Thompson Dep. 30:18-31:17); Ex. W at App. 838 (Weber Dep. 32:1-25). These fire academies must meet DFW standards. Ex. C at App. 60 ¶¶5-9 (Rhodes Decl.); Ex. C-8 at App. 355 (DFW's Fire Training and Research Center rules and regulations, including testing requirements for certification by the TCFP); Ex. O at App. 670-71 (Hill Dep. 112:21-113:14). Their enrollment was paid for by DFW, and they were paid by DFW throughout their time at the fire academy. Ex. C at App. 60 ¶¶5-9 (Rhodes Decl.); Ex. K (Brooks Dep. 40:1-41:15); Ex. V at App. 810-11 (Thompson Dep. 30:18-31:17); Ex. W at App. 838 (Weber Dep. 32:1-25). During their time at the fire academy, Plaintiffs received training on general fire safety, apparatus safety, fire control/extinguishment handling, flammable liquids, liquefied petroleum gas leak/fire control, structural evolution, and live-fire trainings. *See, e.g.*, Ex. J at App. 526-27 (Bird Dep. 36:18-37:20); Ex. K at App. 547-48 (Brooks Dep. 40:1-41:15); Ex. S at App. 746-47 (Ramirez Dep. 33:16-34:17); Ex. W at App. 839-40 (Weber Dep. 33:7-34:4).

Also, the courses attended by Plaintiffs contain a recommended 468 hours of classroom and hands-on field training – including topics on general fire knowledge, general firefighting skills, fire department communications, fire ground operations, rescue operations, preparedness and maintenance, incident command systems, fire suppression systems, fire origin and cause determination, fire and life safety initiatives, and live fire training scenarios while wearing all standard firefighting gear, including a custom-fit face mask. Ex. C at App. 60 ¶¶7-8 (Rhodes Decl.)

Ex. C-1 at App. 63-123 (Excerpts from the TCFP's Certification Curriculum Manual); Ex. Q at App. 707 (Patterson Dep. 51:10-16). Under state statute, at the end of these courses, Plaintiffs were required to pass a course final, complete TCFP-mandated skills testing, and complete a state-administered basic firefighting exam. *See* 37 TEX. ADMIN CODE §§ 423.1, 423.3 (outlining testing and examination requirements for certification in basic fire suppression); Ex. C at App. 60 ¶9 (Rhodes Decl.); Ex. O at App. 670-1 (Hill Dep. 112:21-113:14). If DFW firefighters are unable to pass this exam, after being allowed one retest, they could be subject to discipline, including termination of employment. Ex. C at App. 60 ¶¶9-10 (Rhodes Decl.) Ex. C-1 at App. 63-123 (Excerpts from the TCFP's Certification Curriculum Manual); Ex. O at App. 670-71 (Hill Dep. 112:21-113:14).

DFW, in compliance with FAA regulations, requires that all firefighters, including Plaintiffs, receive additional training in Aircraft Rescue Fire Fighting ("ARFF"). Ex. C at App. 60 ¶¶10-11 (Rhodes Decl.); Ex. B-4 at App. 20 (DFW's fire academy rules and regulations); Ex. J at App. 537 (Bird Dep. 66:14-15); Ex. U at App. 789-90 (Schauer Dep. 54:5-21); Ex. V at App. 828 (Thompson Dep. 70:2-3); Ex. W at App. 838 (Weber Dep. 32:1-25). The purpose of this training is to prepare firefighters for airport- and airplane-specific fire suppression duties. Ex. S at App. 754 (Ramirez Dep. 47:15-21) ("The basic ARFF, the aircraft fire training. God forbid if a plane ever crashes or burns, that's what ARFF is."). Plaintiff Musick testified that during this training, he had both the authority and responsibility to engage in fire suppression. Ex. P at App. 693-94 (Musick Dep. 121:15-18 (authority); 123:6-8 (responsibility)). The TCFP provides a curriculum for ARFF, which meets the standards set by the FAA. Ex. C-1 at App. 63-123 (Excerpts from the TCFP's Certification Curriculum Manual). This ARFF course, provided by DFW's Fire Training and Research Center, is comprised of classroom training, skills training, and live fire training scenarios

wearing all standard firefighting gear, including a custom-fit face mask and self-contained breathing apparatus ("SCBA"). *Id.;* Ex. Q at App. 707 (Patterson Dep. 51:10-16); Ex. Vat App. 812-14 (Thompson Dep. 40:24-42:10). These courses are paid for by DFW, and Plaintiffs are also paid while attending such courses. Ex. C at App. 60 ¶¶5-7 (Rhodes Decl.); Ex. W at App. 838 (Weber Dep. 32:1-25). Individuals seeking ARFF certification must pass the course, complete and pass the state-administered skills exam, and complete and pass a written test to apply for certification. 37 Tex. Admin. Code §§ 423.201, 423.203 (outlining testing and examination requirements for certification in ARFF); Ex. C at App. 60 ¶¶9-10 (Rhodes Decl.). After being certified for ARFF, Plaintiffs are authorized to fight basic aircraft fires. Ex. Vat App. 812-14 (Thompson Dep. 40:24-42:10).

Upon their certifications by the TCFP, and certification as an Emergency Medical Technician-Basic or Paramedic or Licensed Paramedic, firefighter recruits in DPS are promoted to Firefighter after a 12-month probationary period. Ex. B at App. 8 ¶¶7-9 (McKinney Decl.); Ex. B-3 at App. 17-18 ¶4.4 (DPS promotions and transfers policy). Plaintiffs who applied for, and were employed as, Firefighter Recruits were promoted to the position of Firefighter. Ex. B at App. 8 ¶¶7-9 (McKinney Decl.); Ex. B-3 at App. 14 (DPS promotions and transfers policy); Ex. J at App. 528-29 (Bird Dep. 39:17-40:1); Ex. K at App. 549 (Brooks Dep. 43:5-19); Ex. N at App. 623-24 (Harmon Dep. 34:17-35:8); Ex. Q at App. 712(Patterson Dep. 60:12-19); Ex. R at App. 728-29 (Posey Dep. 11:22-12:6); Ex. V at App. 814 (Thompson Dep. 42:15-23); Ex. W at App. 840 (Weber Dep. 34:5-16).

Further evidencing Plaintiffs' training in fire suppression, Plaintiffs commonly hold more advanced firefighter certifications than the minimum required by both DFW and the TCFP. Examples of Plaintiffs' certifications include "Fire Instructor I," "Intermediate Structure

Firefighter," "Intermediate ARFF," "Driver Operator-Pumper," and "Fire Officer II." Ex. F-18 at App. 374-419 (Plaintiff's certificates for Certification by the TCFP); Ex. I at App. 505-09 (Adams Dep. 36:24-40:2); Ex. J at App. 530-31 (Bird Dep. 41:18-42:2; 42:13-19); Ex. K at App. 550 (Brooks Dep. 44:11-23); Ex. L at App. 591-93 (Cowles Dep. 137:11-139:1); Ex. M at App. 610 (Gaither Dep. 66:9-14); Ex. N at App. 631-32, 634, 635 (Harmon Dep. 50:22-51:1; 54:17-22; 60:5-10); Ex. P at App. 681-82 (Musick Dep. 36:8-15; 41:14-24); Ex. U at App. 786 (Schauer Dep. 51:5-22); Ex. W at App. 844-45 (Weber Dep. 45:13-46:2).

Over the course of Plaintiffs' work at DFW, Plaintiffs were required to complete continuing education in fire suppression and ARFF. Ex. C at App. 60-61 ¶¶10-12 (Rhodes Decl.); Ex. J at App. 540 (Bird Dep. 82:9-10; 69:20-70:3); Ex. L at App. 567-68 (Cowles Dep. 60:13-61:6); Ex. M at App. 604-05 (Gaither Dep. 53:14-25; 55:8-20); Ex. N at App. 626 (Harmon Dep. 37:9-12); Ex. P at App. 680 (Musick Dep. 27:5-8); Ex. V at App. 819 (Thompson Dep. 51:17-20). This training was conducted jointly for Firefighters in the Fire Services divisions at DFW's expense. Ex. C at App. 60 ¶¶6-11 (Rhodes Decl.); Ex. L at App. 567 (Cowles Dep. 60:13-61:6); Ex. N at App. 629 (Harmon Dep. 47:15-48:8). As evidenced by Plaintiffs' training logs, since 2016, Plaintiffs received significant fire suppression training. Ex. C-2 at App. 124-31 (DPS training logs, showing fire suppression training undergone by Plaintiffs); Ex. C-3 at App. 137-41 (DPS training logs, showing ARFF training undergone by Plaintiffs). For example, fire suppression topics within the scope of Plaintiffs' training include and are not limited to: (1) Fire Service Communications; (2) Basic Fire Technology; (3) Aircraft Rescue and Fire Fighting; (4) Fire Service Personal Protective Equipment; (5) Portable Fire Extinguisher Basics; (6) High-Rise Fire Operations; and (7) Fire Streams, Patterns, & Nozzles. Ex. C-2 at App. 124-34 (DPS training logs, showing fire suppression training undergone by Plaintiffs); Ex. C-3 at App. 137-41

(DPS training logs, showing ARFF training undergone by Plaintiffs); Ex. L at App. 588-90 (Cowles Dep. 126:22-128:1); Ex. O at App. 663-64 (Hill Dep. 73:12-74:8); Ex. Nat App. 647-48 (Harmon Dep. 127:6-128:13); Ex. V at App. 820-21 (Thompson Dep. 54:20-55:5); Ex. W at App. 846-47 (Weber Dep. 48:23-49:4 ). Plaintiffs, given the nature of their work at DFW, were also given specialized training in ARFF. Ex. C-3 at App. 137-41 (DPS training logs, showing ARFF training undergone by Plaintiffs). Topics included within this training include ARFF: (1) Emergency Communication; (2) Tactical Operations; (3) Hoses & Nozzles; (4) and Extinguishing Agents. *Id.*; Ex. N at App. 645-46 (Harmon Dep. 123:1-124:9); Ex. P at App. 689-90 (Musick Dep. 108:3-109:17).

### D. Plaintiffs' legal authority and responsibility to engage in fire suppression.

*1. Plaintiffs' oath, Texas law, statutory authorities, and DFW policies reflect Plaintiffs' legal authority and responsibility to engage in fire suppression.*

The TCFP governs certification and legal authorization of firefighters in Texas, and thus provides legal authority and responsibility to engage in fire suppression. TEX. GOV'T CODE § 419.022(a)(5) (authorizing the TCFP to "establish minimum educational, training, physical, and mental standards for admission to employment as fire protection personnel"); Ex. J at App. 539 (Bird Dep. 81:5-7);[7] Ex. R at App. 731 (Posey Dep. 36:4-9);[8] Ex. T at App. 769-70 (Reeder Dep. 67:14-19); Ex. V at App. 824 (Thompson Dep. 65:7-16);[9] Ex. W at App. 850 (Weber Dep. 68:8-17).[10] DFW trained Plaintiffs and ensured they are certified by the TCFP as firefighters, so that

---

[7] Ex. J at App. 539 (Bird Dep. 81:5-7) (*Q.* The **State grants you the legal authority to engage in fire suppression, right? *A.* Yes.**)

[8] Ex. R at App. 731 (Posey Dep. 36:4-9) (***Q. Does being certified in Exhibit 4 show that you have any authority to suppress fire? *A.* Yes.*** *Q.* Okay. How so? *A.* Well, it says I'm certified as a Basic Structure Firefighter.)

[9] Ex. V at App. 824 (Thompson Dep. 65:7-16) (*Q.* Under minimum requirements it lists possession of a Texas State certification in basic structural fire fighting as prescribed by the Texas Fire Commission. *A.* Yes. *Q.* And you have that certification. *A.* Yes, I do. *Q.* Right? **So you have authority to fight fires. *A.* Yes, I do.**).

[10] Ex. W at App. 850 (Weber Dep. 68:8-17) (*Q.* **So you do have legal authority to engage in fire suppression, right? *A.* Sure. *Q.* Is that a "yes"? *A.* Yes.** *Q.* And that's demonstrated by Exhibits 12 through 15, right? *A.* Yes.).

11

they are legally authorized to engage in fire suppression; when they respond to fire grounds as part of DFW's emergency response team, Plaintiffs can discharge their responsibility to engage in fire suppression when it is appropriate for them to do so. Ex. Bat App. 8 ¶¶12-13 (McKinney Decl.); Ex. J at App. 539 (Bird Dep. 81:5-7); Ex. R at App. 769-70 (Posey Dep. 36:4-9; 38:11-15); Ex. S at App. 747-48 (Ramirez Dep. 34:17-35:2);[11] Ex. V at App. 824 (Thompson Dep. 65:7-16); Ex. W at App. 850 (Weber Dep. 68:8-17).

Plaintiffs are further informed of this legal authority and responsibility during their employment at DFW. Plaintiffs signed an oath of office, recognizing their duties as firefighters. Ex. F-19 at App. 420-29 (Plaintiff's Oaths of Office). For example, Plaintiff Thompson's oath provides:

> I, [Plaintiff's Name], **having been promoted to the rank of firefighter** in the Dallas/Fort Worth International Airport Department of Public Safety Fire Services, do solemnly swear or affirm that I will support the Constitution of the United States and the Constitution of the State of Texas and that **I will faithfully discharge the duties of firefighter**.

*Id.* at App. 425; Ex. V at App. 815-16 (Thompson Dep. 43:15-44:11) (emphasis added).

Plaintiffs also agreed to abide by the DPS Code of Conduct, where they explicitly recognized their responsibility to engage in fire suppression. Ex. L at App. 585 (Cowles Dep. 108:8-10); Ex. O at App. 665-66 (Hill Dep. 99:25-100:3). The code of conduct states in relevant part:

> 3.7 Line of Duty
> 3.7.1 All employees must remain ready to respond to any call or perform any necessary public safety function.
> 3.7.2 All appropriate personnel must report, in a timely manner, to the scene of any fire, crash, disturbance, or breach of the peace

---

[11] Ex. S at App. 747-48 (Ramirez Dep. 34:17-35:2) (*Q.* 4.12.3 of this policy contained in exhibit 7 states that: Certifications are a requirement for the position of DPS firefighter. Right? *A.* Correct. *Q.* Why do you believe that is? *A.* To keep us knowledgeable. *Q.* And **why do you think you need to be knowledgeable? *A.* To be ready for any emergency. *Q.* Including fires? *A.* Fires, medicals.**).

> occurring within that unit's vicinity, and employ best efforts to restore normal conditions, taking such actions as may be necessary.
>
> 3.7.3   Although regular hours of duty are assigned, it is the duty of every employee, when within the area of the Airport, to preserve the public peace, and protect life and property as appropriate.

Ex. B-5 at App. 27-28 (DPS Code of Conduct).

Plaintiffs' job descriptions provide that they, as firefighters in the EMS division, must be able to "work around fire, liquid fuels and hazardous chemicals" and work "in extreme temperatures and weather conditions." Ex. F-1 at App. 279 (Job description for Firefighter); Ex. L at App. 579-84 (Cowles Dep. 102:2-103:17; 105:7-25; 106:25-107:10).

> 2.  *Plaintiffs' training and dispatch calls reflect Plaintiffs' legal authority and responsibility to engage in fire suppression.*

Several Plaintiffs received additional training and certifications, specific to both wildfires, forest fires, and ARFF. For example, Plaintiffs Gaither, Harmon, and Patterson, along with a number of individuals in the Fire Rescue division, received advanced training in ARFF. Ex. C-4 at App. 142-51 (DPS training logs, showing advanced ARFF training undergone by Plaintiffs Gaither, Harmon, and Patterson); Ex. C-5 at App. 152-71 (DPS training logs, showing advanced ARFF training undergone by Plaintiff Patterson). Plaintiff Harmon testified that through this training, she engaged in fire suppression, and learned "how to suppress a fire." Ex. N at App. 627-28 (Harmon Dep. 40:17-41:6). Plaintiffs Bird, Harmon, Musick, and Thompson are each certified in fighting wildfires and forest fires by the Texas Intrastate Fire Mutual Aid System ("TIFMAS"). Ex. C-6 at App. 172 (Screenshot of TIFMAS website); Ex. C-7 at App. 173 (List of Firefighters, including Plaintiffs Bird, Harmon, Musick, and Thompson, who are certified in fighting wildfires and forest fires by TIFMAS). Such training and certifications goes *beyond* what is required by either the TCFP or DFW to be both legally authorized and responsible for fire suppression. Indeed,

13

in her related training, **Plaintiff Harmon discussed her engagement in fire suppression at DFW**. Ex. N at App. 638-43 (Harmon Dep. 102:20-104:17; 108:25-110:22).[12]

Further evidence of Plaintiffs' legal authority and responsibility to engage in fire suppression is seen in the calls to which Plaintiffs were required to respond. In the vast majority of emergency calls the DPS receives, individuals in the Fire Rescue and EMS divisions are sent in response. Between January 2017 and January 2018, over 77% of emergency calls received dispatched personnel in both divisions. Ex. B-8 at App. 50 (DPS logs showing a breakdown of dispatch calls between the EMS division and Fire Rescue division, including by call type, percent occurrence of each call type, and which division was dispatched to each call). By contrast, .771% of calls were responded to by only EMS personnel. *Id.* The individuals in those divisions, including Plaintiffs, are expected to work collaboratively to respond to the emergencies for which they are

---

[12] Ex. N at App. 638-43 (Harmon Dep. 103:2-104:17 (*Q.* Okay. And the training was at DFW? *A.* Yes. *Q.* Okay. Where was that training done? *A.* Classroom and then we would go out in some of the areas of the airport and actually do some wildland type situations. *Q.* **Like actual fire?** *A.* **We would learn how to set, like, back fires and stuff like that.** *Q,* **So DFW obviously is very large and has a lot of land, right?** *A.* Yes. *Q.* **So would you use some of that land to say light a fire in some grass and put it out?** *A.* **It was over by the FRTC.** *Q.* Okay. But that's what you did, light some grass on fire? *A.* It was a – it was very controlled. *Q.* Of course. Of course. I'm not suggesting otherwise. So I guess I should be asking you: What was the fire that got set and then put out? *A.* They were trying to do a back burn, I believe, at the time. *Q.* What is that? *A.* **It's where you set a fire in front of the fire to burn out your – like your grasses and stuff that when it hits, it has no fuel, and it – you try to kill it out before it can go past it, and then you learn how to dig trenches with the wildland tools.** They're different than your fire suppression tools on your engines and stuff. It's different tools, because your uniforms are even different. *Q.* **And you did that actual digging that you're describing?** *A.* **Oh, yeah.** *Q.* **You and other folks in the EMS Division that were on the TIFMAS schedule would do this wildland fire training you're describing?** *A.* **If you were on the team**.).

*Id.* at 108:25-110:22 (*Q.* And you were talking about the training at DFW to suppress wildland fire, right? *A.* That's all I was speaking about, sir. *Q.* We agree? *A.* Yes. *Q.* Okay. And the **wildland fire-suppression training happened at property owned by DFW, right?** *A.* **yes Sir**. *Q.* It was either at or near the FRTC? *A.* I believe so, yes. *Q.* Okay. Was it anywhere else, that training for wildland fire suppression? *A.* A classroom, as I stated. *Q.* So it was the classroom training and also training in the grass where the fire was set, right, the back fire? *A.* Yes. *Q.* Is that the right term, the back fire, back burn? *A.* I believe that is what the terminology is, yes. *Q.* Back burn? *A.* I believe it's called a back burn, yes. *Q.* Okay. *A.* I may be wrong. *Q.* And you used tools to dig around that back burn right? *A.* Yes. *Q.* And that was a – that back burn was a live fire, right? *A.* I guess so, yes. *Q.* Well before we took the break, you remember it was very clear about this and now it seems a little hazy? *A.* It's not hazy. **It's just a live fire, yes, it was a fire that we set.** *Q.* Okay. *A.* **If you want to call that a live fire, then that is the definition of a live fire.** *Q.* **Well, that's my question, was the back burn a live fire?** *A.* **Yes, it was actual flames.** *Q.* **Okay. And you and others of the TIFMAS deployment team were using tools to dig ditches to help extinguish and suppress that back burn, right?** *A.* **Yes**.).

14

dispatched. These emergencies where both Fire Rescue and EMS personnel are dispatched include: (1) bomb threat; (2) explosion; (3) injured person; (4) medical emergency; (5) fire visible in building; and (6) vehicle fire. *Id.*; Ex. O at App. 660 (Hill Dep. 49:15-23);[13] Ex. U at App. 799 (Schauer Dep. 110:21-22); Ex. W at App. 848 (Weber Dep. 55:17-24). For example, Plaintiff Schauer admitted that his job duties included "respond[ing] to calls and perform[ing] general fire/rescue work," responding to "fire incidents," and "perform[ing] structural and aircraft fire rescue duties including but not limited to responding to alarms" when they are dispatched to those incidents. Ex. U at App. 798 (Schauer Dep. 109:5-24). Further, Plaintiffs readily admit that they responded to emergency situations "where life was at risk." *See* Ex. X at App. 855-944 (Pls' Responses to Def's First Requests for Admission), at 5; *see also* Ex. J at App. 539 (Bird Dep. 81:17-19); Ex. K at App. 557 (Brooks Dep. 82:2-4); Ex. L at App. 572-73, 578 (Cowles Dep. 86:22-87:1; 100:12-18); Ex. M at App. 606-07 (Gaither Dep. 60:24-61:4);[14] Ex. N at App. 625 (Harmon Dep. 36:17-19); Ex. O at App. 660-62 ( Hill Dep. 49:15-23; 70:24-71:11); Ex. P at App. 679 (Musick Dep. 26:15-20); Ex. Q at App. 718 (Patterson Dep. 128:8-11); Ex. S at App. 759 (Ramirez Dep. 71:10-15); Ex. T at App. 768 (Reeder Dep. 49:10-12);[15] Ex. U at App. 784 (Schauer Dep. 49:19-50:3); Ex. V at App. 825 (Thompson Dep. 66:17-24); Ex. W at App. 850-51 (Weber Dep. 68:18-69:1).

---

[13] Ex. O at App. 660 (Hill Dep. 49:15-23) (*Q.* **So if there's a fire with flames showing, EMS division must respond, correct?** *A.* **Correct.** *Q.* Because life and property is at risk, right? *A.* Correct. *Q.* And that's an emergency situation, right? *A.* Correct.).

[14] Ex. M at App. 606-07 (Gaither Dep. 60:24-61:4) (*Q.* So my question is: In the EMS Division did you respond to emergency situations? *A.* Yes. *Q.* In some of those emergency situations was life at risk? *A.* Yes.).

[15] Ex. T at App. 768 (Reeder Dep. 49:10-12) (*Q.* While working in the EMS Division, have you responded to emergency situations where life is at risk? *A.* Yes.).

### 3. *Plaintiffs' firefighting equipment reflects Plaintiffs' responsibility to engage in fire suppression.*

Plaintiffs' responsibility to engage in fire suppression as needed is further demonstrated because each Plaintiff—like other DFW Firefighters—is provided with fire-resistant personal protective equipment ("PPE"), including a firefighting coat, pants, gloves, boots, a helmet, a hood, and a custom-fit mask designed to be connected with an SCBA.[16] Ex. D at App. 184 ¶¶10-12 (Smith Decl.); Ex. D-1 at App. 185-93 (DPS Policy on PPE issued to Fire Services Firefighters); Ex. D-2 at App. 194 (Specific PPE issued to Plaintiff Patterson); Ex. G at App. 497-98 ¶¶2-8 (Boyton Decl.); Ex. H at App. 499-50 ¶¶2-8 (Kurtulan Decl.); Ex. I at App. 511-12 (Adams Dep. 71:20-72:24); Ex. J at App. 533 (Bird Dep. 51:9-14); Ex. K at App. 551-52 (Brooks Dep. 52:20-53:19); Ex. L (Cowles Dep. 97:25-98:5); Ex. M at App. 613 (Gaither Dep. 123:2-9); Ex. N at App. 649 (Harmon Dep. 152:10-13); Ex. O at App. 668 (Hill Dep. 102:7-16); Ex. P at App. 685 (Musick Dep. 95:19-96:7); Ex. Q at App. 708-11 (Patterson Dep. 54:12-57:1); Ex. S at App. 749-50, 752 (Ramirez Dep. 36:15-37:1; 43:7-25); Ex. U at App. 795-97 (Schauer Dep. 106:13-108:3); Ex. V at App. 817 (Thompson Dep. 45:6-13); Ex. W at App. 841-42 (Weber Dep. 37:7-38:16). That PPE is specifically designed to protect Plaintiffs from extreme heat and flame conditions associated with firefighting duties. Ex. D at App. 183 ¶¶11-12 (Smith Decl.); Ex. D-1 at App. 185-93 (DPS Policy on PPE issued to Fire Services Firefighters); Ex. I at App. 513-14 (Adams Dep. 74:23-75:1); Ex. J at App. 532 (Bird Dep. 48:1-5); Ex. Q at App. 708-11 (Patterson Dep. 54:12-57:1); Ex. S at App. 752 (Ramirez Dep. 43:7-25); Ex. T at App. 773 (Reeder Dep. 118:8-15); Ex. U at App. 795-97 (Schauer Dep. 106:13-108:3); Ex. W at App. 841-42 (Weber Dep. 37:7-38:16). Plaintiffs admit that their PPE is for firefighters and fire protection, and is not required to respond

---

[16] Notably, there is no purpose for Plaintiffs' custom-fit mask other than to be connected and used in conjunction with an SCBA. Ex. J at App. 535-6 (Bird Dep. 64:23-65:2); Ex. N at App. 637 (Harmon Dep. 84:6-10); Ex. P at App. 687 (Musick Dep. 97:5-13); Ex. Q (Patterson Dep. 89:2-9).

16

to EMT calls. Ex. J 532 (Bird Dep. 48:1-5); Ex. N at App. 650 (Harmon Dep. 153:2-19); Ex. P at App. 685 (Musick Dep. 95:19-96:7); Ex. Q at App. 708-11 (Patterson Dep. 54:12-57:1); Ex. S at App. 752 (Ramirez Dep. 43:7-25).

Plaintiffs are instructed on how to maintain, care, and clean the PPE they are issued. Ex. O at App. 668 (Hill Dep. 102:7-16); Ex. U at App. 795-97 (Schauer Dep. 106:13-108:3). When Plaintiffs are on duty, one of the first things they do is move their PPE from their locker to prepare for their shift, and keep it with them if assigned to an ambulance. Ex. I at App. 512 (Adams Dep. 72:3-24); Ex. P at App. 686-87 (Musick Dep. 96:15-97:3); Ex. K at App. 553 (Brooks Dep. 56:15-20); Ex. U at App. 795-97 (Schauer Dep. 106:13-108:3); Ex. V at App. 818 (Thompson Dep. 49:5-18). Throughout their employment, Plaintiffs wear their issued PPE – for example, Plaintiff Thompson estimated that over the past three years, he had worn his full set of PPE 75 times. Ex. V at App. 822-23 (Thompson Dep. 59:24-60:10). The PPE issued to Plaintiffs was the same PPE issued to firefighters in the Fire Rescue division. Ex. J at App. 532 (Bird Dep. 48:3-5); Ex. M at App. 614 (Gaither Dep. 124:1-3); Ex. R at App. 734 (Posey Dep. 80:8-24).

Also, Plaintiffs are provided training and access to SCBAs, which are on certain fire apparatuses (*i.e.*, vehicles).[17] Ex. D at App. 183-83 ¶¶2-8 (Smith Decl.); Ex. J at App. 532 (Bird Dep. 48:15-17); Ex. R (Posey Dep. 73:9-74:17); Ex. U at App. 797 (Schauer Dep. 108:13-18). Plaintiffs are also given training, to familiarize them with use of an SCBA, while wearing their full set of PPE. Ex. N at App. 636 (Harmon Dep. 80:7-25); Ex. P at App. 683 (Musick Dep. 44:9-45:20); Ex. Q at App. 714 (Patterson Dep. 98:1-100:14); Ex. R at App. 732-33 (Posey Dep. 73:9-74:17); Ex. T at App. 772 (Reeder Dep. 115:6-18); Ex. U at App. 791 (Schauer Dep. 67:11-14);

---

[17] An "apparatus" is a term used by emergency services to describe any vehicle that has been customized for use in firefighting and other emergency operations. Such vehicles include fire trucks, fire engines, and other emergency response vehicles.

Ex. W at App. 843 (Weber Dep. 43:14-23). For all fire recruits and firefighters in DFW's DPS, a specific SCBA is not issued to a specific individual, but every SCBA is instead made available for use by each individual on duty. Ex. D at App. 182-83 ¶¶4-6 (Smith Decl.). That practice complies with Texas law and the rules of the TCFP, which provide that a fire department must "purchase, provide, and maintain a complete self-contained breathing apparatus for each on-duty fire protection personnel." 37 TEX. ADMIN. CODE § 435.3; Ex. D at App. 182-83 ¶¶4-7 (Smith Decl.).

To that end, DFW purchased, provided, and maintained over 100 SCBAs, sufficient for every individual on duty, including Plaintiffs. Ex. D at App. 182 ¶¶3-4 (Smith Decl.). These SCBA's are regularly maintained and tested to be ready to use at any time. *Id.* Specifically, the SCBAs are assigned to fire apparatuses and are in the Fire Training and Research Center, and Plaintiffs are aware of where SCBAs are located. *Id.*; Ex. J at App. 532 (Bird Dep. 48:15-17); Ex. P at App. 688 (Musick Dep. 105:5-25); Ex. Q at App. 713 (Patterson Dep. 89:16-22); Ex. R at App. 732-33 (Posey Dep. 73:9-74:17); Ex. S at App. 751 (Ramirez Dep. 39:15-25); Ex. U at App. 797 (Schauer Dep. 108:7-18). An SCBA is not necessary for all fire suppression duties, for example as a driver or pump operator. Ex. K at App. 555 (Brooks Dep. 61:17-20); Ex. S at App. 757 (Ramirez Dep. 59:12-22). Yet Plaintiffs and other Firefighters are nevertheless given access to SCBAs, as well as other fire suppression equipment during an emergency.

Specifically, every fire apparatus is assigned at least one extra SCBA, that may be used by other Firefighters (including Plaintiffs) dispatched to a fire scene. Ex. D at App. 182-83 ¶¶3-7 (Smith Decl.). Each Rapid Intervention Vehicle ("RIV") is equipped with one more SCBA than the number of Firefighters assigned to each RIV. *Id.* And each Mass Application Vehicle ("MAV") is equipped with two more SCBAs than the number of Firefighters assigned to each MAV. *Id.* In a typical ARFF response, the DPS will dispatch three fire structural engines, three MAVs, one

18

RIV, one ambulance, and one battalion vehicle. *Id.* In a typical ARFF response, ten extra SCBAs are available for any Firefighter (including Plaintiffs) dispatched to an ARFF scene. *Id.* As a result, an SCBA is made available to every Firefighter (including Plaintiffs) dispatched to the fire scene. *Id.* Indeed, Plaintiff Gaither testified that in an emergency situation, a DFW firefighter may go to another apparatus and borrow the equipment. Ex. M at App. 611 (Gaither Dep. 74:5-17).

In sum, Plaintiffs are provided, or otherwise have access to, all of the equipment sufficient to engage in fire suppression, and therefore have the responsibility to engage in fire suppression if called upon to do so.

>        *4.* *Plaintiffs' work across the Fire Services division reflects Plaintiffs' legal authority and responsibility to engage in fire suppression.*

Plaintiffs' legal authority and responsibility to engage in fire suppression is further evidenced by their being assigned to different teams outside of the EMS division. Plaintiffs assert that other divisions (such as Fire Rescue and Special Operations) have legal authority and responsibility to engage in fire suppression – and **Plaintiffs admit they can and do work in those divisions**.

Plaintiffs admit that they could be assigned to work in a different division to work a shift, or as a temporary duty assignment. Ex. U at App. 800 (Schauer Dep. 116:2-14). For example, Plaintiff Patterson worked in the Fire Special Operations team within the Fire Rescue division. Ex. F-20 at App. 430 (DFW form for Additional Hours Worked, completed by Plaintiff Patterson); Ex. Q at App. 717 (Patterson Dep. 105:18-25). That team is responsible for delivering "specialized response capabilities to Hazardous Materials and Technical Rescue Incidents to DFW Airport." Ex. B-7 at App. 43-49 (DPS Policy on the Fire Special Operations Team). Plaintiffs are eligible to work in all Fire Services divisions, including the Fire Rescue division, because Plaintiffs had the legal authority and responsibility to engage in fire suppression. Ex. B at App. 8 ¶¶12-13

(McKinney Decl.). Indeed, Plaintiffs are eligible to work extra shifts with the Fire Rescue division. *See, e.g.*, Ex. U at App. 800 (Schauer Dep. 116:2-5).

Plaintiffs admit they have legal authority and responsibility to engage in fire suppression. For example, Plaintiff Harmon discussed her direct engagement in fire suppression. Ex. N at App. 638-43 (Harmon Dep. 102:20-104:17; 108:25-110:22). She testified that she participated, literally, in fire suppression in response to a fire on DFW grounds. *Id.* Her fire suppression occurred on DFW grounds due to her involvement on the TIFMAS team, which includes other Plaintiffs on a constantly rotating basis. *Id.* During this training, Plaintiff Harmon and the other firefighters wore specialized gear, paid for by DFW. *Id.* at App. 644-45 (113:14-20). Likewise, Plaintiff Ramirez testified that he directly engaged in fire suppression while wearing an SCBA. Ex. S at App. 760 (Ramirez Dep. 75:2-18).

Plaintiffs also admit that they were authorized to engage in fire prevention activities, and that these, among others, were their responsibility as firefighters at DFW. Ex. L at App. 582-84 (Cowles Dep. 105:7-25; 106:25-107:10). Plaintiffs' peers from the EMS division testified that these duties show the responsibility to engage in fire suppression. Ex. G at App. 497 ¶¶3-6 (Boyton Decl.); Ex. H at App. 499 ¶¶3-6 (Kurtulan Decl.).

Indeed, firefighters in both the EMS division and the Fire Rescue division, as employees within DFW's Fire Services, are issued the same PPE for the purpose of providing protection when "exposed to hazardous conditions from fire or other emergencies." Ex. D-1 at App. 185-93 (DPS Policy on PPE issued to Fire Services Firefighters); Ex. J at App. 532 (Bird Dep. 48:1-5); Ex. M at App. 614 (Gaither Dep. 124:1-3); Ex. R at App. 734 (Posey Dep. 80:8-24).

     **E.**     **Plaintiffs' schedules and compensation.**

     Plaintiffs, as Firefighters within the EMS division, work a 24-hour shift schedule. Ex. E at App. 235 ¶3 (Moore Decl.); Ex. E-1 at App. 238-40 (Hours worked policy for Firefighters in the DPS). Plaintiffs, and all Firefighters within the EMS division, have a regularly-recurring 28-day work period during which they work 10 days "on" and 18 days "off." Ex. E at App. 235-36 ¶¶3-8 (Moore Decl.); Ex. E-2 at App. 241-43 (24-hour shift schedule, showing example days scheduled, and days off). Specifically, Plaintiffs typically work one 24-hour shift, then have 48 hours "off." Ex. E at App. 235 ¶3 (Moore Decl.).

     Plaintiffs are compensated for a 14-day pay period – twice during their 28-day work period. Ex. E at App. 235 ¶4 (Moore Decl.); Ex. E-3 at App. 244-45 (DPS policy including explanation of work periods and pay periods). For their work performed in a typical 24-hour shift, Plaintiffs were compensated at the regular (REG) rate. Ex. E at App. 235-36 (Moore Decl.). This rate was at least $18.45 per hour as of February 2015, increasing over time as Plaintiffs gained seniority. *See, e.g.*, Ex. E-6 at App. 250-67 (Pay Stubs dated between February 2015 and May 2018, for Plaintiff Cowles). In work periods where Plaintiffs worked more than 208 hours, they were compensated at 1.5 times the regular rate, using the "OVT" pay code. Ex. E at App. 236 ¶6 (Moore Decl.); Ex. E-4 at App. 246-47 (DPS policy for overtime compensation). Where Plaintiffs worked in other shifts, for example, in training, they were compensated at the "RT8" rate. Ex. E at App. 236 ¶7 (Moore Decl.); *see, e.g.*, Ex. E-6 at App. 250-67 (Pay Stubs dated between February 2015 and May 2018, for Plaintiff Cowles).

     Plaintiffs were paid 18 hours of their regular pay for holidays, even when not scheduled to work. Ex. E at App. 236 ¶¶5-8 (Moore Decl.); Ex. E-5 at App. 248-49 (DFW Policy for holidays and holiday pay). When Plaintiffs worked a shift on a holiday, they were compensated both for the

18 hours of regular pay, and under the "OTH" pay code at 1.5 times the regular rate. Ex. E at

App. 236 ¶8 (Moore Decl.); Ex. E-5 at App. 248-49 (DFW Policy for holidays and holiday pay).

## III.     ARGUMENT AND AUTHORITIES[18]

### A.     The § 207(k) partial exemption and Congress's amendment of the FLSA to clarify that § 207(k) is applicable to Plaintiffs.[19]

   *1.   Under § 207k, employees engaged in fire protection who work a regularly recurring 28-day work period must work more than 212 hours before they are entitled to overtime.*

Under § 207(a) of the FLSA, employers are generally required to compensate employees

at one and one-half their regular rate of pay for all hours worked in excess of forty in a workweek.

29 U.S.C. § 207(a). In 1974, due to the nature of emergency service work, which does not fit into

the normal pattern of a forty-hour work week, Congress enacted § 207(k). It provides a partial

exemption from the overtime provisions for public employees engaged in "fire protection

activities." 29 U.S.C. § 207(k); *see also McGavock v. City of Water Valley*, 452 F.3d 423, 425 (5th

Cir. 2006). The partial exemption of § 207(k) provides, in relevant part:

> No public agency shall be deemed to have violated subsection (a) with respect to
> the employment of any employee in fire protection activities or any employee in
> law enforcement activities . . . if –
> (1) in a work period of 28 consecutive days the employee receives for tours of duty
> which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average
> number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the

---

[18] This Court is more than familiar with the summary judgment standard. *See, e.g.*, *Rodriguez v. Tarland, LLC*, No. 3:18-CV-00088-E, 2019 U.S. Dist. LEXIS 211080, at *2-3 (N.D. Tex. Dec. 6, 2019) (Brown, J.).
[19] Plaintiffs' Complaint mentions Paramedic Incentive Pay. *See* Pls.' Compl. at ¶¶ 36-38. However, such pay is not germane to this lawsuit, as such pay is omitted from Plaintiff's Motion for Conditional Certification and notice to putative class members. See Dkt. 23 and 23-A. Plaintiffs Harmon and Schauer testified that they were unaware that incentive pay was part of this lawsuit. Ex. N at App. 621 (Harmon Dep. 9:2-4); Ex. U at App. 783 (Schauer Dep. 24:1-3). Plaintiffs cannot justifiably include claims for which a putative class did not receive notice. Further, some of the plaintiffs that opted into this case did not receive incentive pay. Regardless, **incentive pay was included within Plaintiffs' regular rate to calculate the overtime rate**. Where Plaintiffs received overtime pay in a given pay period, they also received an overtime adjustment (under the OTA and OFA pay codes) to compensate Plaintiffs for the increased regular rate for that pay period based on incentive pay received. Ex. E at App. 236 ¶¶9-10 (Moore Decl.); *see, e.g.*, Ex. E-6 at App. 250-67 (Pay Stubs dated between February 2015 and May 2018, for Plaintiff Cowles). The lead/representative plaintiff (Patterson) has no basis for the allegation, other than privileged conversations with his attorneys. Ex. Q at App. 719-21 (Patterson Dep. 141:21-142:7; 142:22-143:9). Thus, to the extent Plaintiffs have any claim related to any incentive pay or bonus, Defendant requests summary judgment.

Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975 . . . compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k).[20]

To qualify for the § 207(k) exemption, an employer must be a public employer utilizing a regularly recurring work period[21] of between seven and 28 days. 29 U.S.C. § 207(k); *see also Lee v. Coahoma County*, 937 F.2d 220, 224 (5th Cir. 1991). DFW's firefighters in the EMS division work a regularly recurring 28-day work period, which typically consists of 24 hours "on" and 48 hours "off." Ex. E (Moore Decl.); Ex. E-3 (DPS policy including explanation of work periods and pay periods). Plaintiffs worked this 24-hour shift schedule, along with varying amounts of work scheduled for an 8-hour shift, for tasks such as training or in-service work. Under this schedule, Plaintiffs typically worked no more than 208 hours in their regularly recurring, 28-day tour of duty. Plaintiffs were paid overtime compensation for any hours exceeding 208 hours worked within one working period. Ex. E at App. 235-36 ¶¶3-6 (Moore Decl.); Ex. E-4 at App. 246-47 (DFW policy for overtime compensation)

Overtime compensation is only required for all hours worked in excess of 212 hours in that 28-day period, and Plaintiffs' regular schedule is within that hour limit at which overtime rates would apply. Thus, the § 207(k) exemption eliminates any liability for overtime pay as a result of Plaintiffs' regular work schedule. **Plaintiffs qualify under the original exemption, which was made even broader in 1999**.

---

[20] The Department of Labor has set the maximum number of hours in a 28-day work period under § 207(k) to 212 hours per work period. 29 C.F.R. § 553.230(a).
[21] A work period "refers to any established and regularly recurring period of work which, under the terms of the [FLSA], cannot be less than 7 consecutive days nor more than 28 consecutive days." 29 C.F.R. § 553.224(a); *see also Lee*, 937 F.2d at 224.

    *2.  The partial overtime exemption of § 207(k) was expanded by Congress to make § 207(k) more broadly applicable.*

In 1999, Congress amended the FLSA at 29 U.S.C. § 203(y) and thus broadened the definition of an "employee in fire protection activities" under § 207(k).

> "Employee in fire protection activities" means an employee, including a firefighter, ***paramedic, emergency medical technician, rescue worker, ambulance personnel***, or hazardous materials worker, who—
>
> > (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
> >
> > (2) is engaged in the prevention, control, and extinguishment of fires **or response to emergency situations where life,** property, or the environment is at risk.

29 U.S.C. § 203(y) (emphasis added)).

The amendment more clearly explained that many paramedics are subject to the partial exemption in § 207(k). Two years after the amendment, the Fifth Circuit made the following findings regarding § 203(y):

> a. the legislative history of the statute clearly showed the intent to correct courts that had interpreted § 207(k) too narrowly and costs local governments millions of dollars in back pay, attorneys' fees and court costs;
>
> b. § 203(y) "explicitly covers a broad class of employees, including paramedics, emergency medical technicians, rescue workers, and ambulance personnel"; and
>
> c. § 203(y) "dispenses with the rescue training and regularity requirements for exemption of EMS workers under the pre-amendment regulations."[22]

*Vela v. City of Houston*, 276 F.3d 657, 673–74 (5th Cir. 2001). Thus, **the court held that *more* employees fall within Section 207(k)'s exemption than before the amendment's implementation**. *Id.* at 674.[23]

---

[22] While the court ultimately ruled in favor of the plaintiffs, it did so solely because it determined that § 203(y) should not be applied retroactively. *See id.* at 674 n.19.

[23] Similarly, the *Vela* court pointed out that during congressional debates, Representative Boehner observed:

Section 203(y) clarifies the 207(k) exemption by providing a single test for emergency services employees regardless of whether they are firefighters, paramedics, EMTs, or Hazmat responders. Further, Section 203(y)(2) simplifies the determination of what constitutes exempt activities under 207(k), in that exempt activities include all emergency responses "where life, property, or the environment is at risk."

Thus, Congress made clear that paramedics and other emergency responder employees employed by public agencies (such as DFW) are partially exempt from the overtime provisions under § 207(k) when they are (1) trained in fire suppression; (2) have the legal authority and responsibility to engage in fire suppression; and (3) respond to emergency situations where life, property, or the environment are at risk. 29 U.S.C. § 203(y). The Fifth Circuit discussed Congress's addition of § 203(y), and stated:

> The only purpose of Congress in amending the statute that is clear to us, is that *it intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire department to be considered employees engaged in fire protection activities <u>even though they may spend one hundred percent of their time responding to medical emergencies</u>*.

---

Many State and local governments employ EMS personnel who receive training and work schedules and maintain levels of preparedness which is very similar to that of firefighters. In the past, these types of employees fit within the 7(k) overtime exemption.

In recent years, however, some courts have narrowly interpreted the 7(k) exemption and held that emergency medical services personnel do not come within the exemption because the bulk of their time is spent engaged in nonfire protection activities. These lawsuits have resulted in State and local governments being liable for millions of dollars in back pay, attorneys' fees and court costs.

So there is a real need to modernize this area of the Fair Labor Standards Act and to clearly specify who can be considered a fire protection employee for purposes of the exemption.

*Id.* at 674 (quoting 145 Cong. Rec. at *H11500 (statement of Rep. Boehner)). The sponsor of the new § 203(y), Representative Ehlich, further explained:

[F]rom its inception, the Fair Labor Standards Act has exempted fire protection employees from the traditional 40-hour workweek. **Historically, any emergency responder paid by a fire department was considered to be a fire protection employee. However, recent court interpretations of Federal labor statutes have rendered this definition unclear. [Section 203(y)] seeks to clarify the definition of a fire protection employee**.

*Id.* (quoting 145 Cong. Rec. at *H11500 (statement of Rep. Ehlich)) (emphasis added).

25

*McGavock*, 452 F.3d at 427 (emphasis added). Thus, the Fifth Circuit confirmed that **§ 203(y) broadened the § 207(k) partial exemption – and did so specifically to incorporate a broader class of employees (such as Plaintiffs) into the exemption**. *See id.*

There is no requirement under § 203(y) that employees, like Plaintiffs, be trained to a certain minimum standard in fire suppression, or actually perform fire suppression activities. *See id.* Rather, so long as they receive training in fire suppression and have the legal authority and responsibility to engage in fire suppression activities when/if called upon, they need only respond to emergency situations involving life, property, or the environment to qualify for the statutory exemption. *See id.*

Indeed, the plain and obvious meaning of § 203(y) is demonstrated further by the Department of Labor in an opinion letter issued in relation to the statutory exemption. *See* U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter FLSA2005-9NA (Sept. 9, 2005) ("Opinion Letter FLSA 2005-9NA"). In that opinion letter, the DOL analyzed firefighters/paramedics working within a county fire department, where the firefighter/paramedics spent the majority of their time "providing emergency medical services, as those calls occur far more frequently than do fire calls." *Id.* at 1. The DOL ultimately explained that the firefighter/paramedics fell under § 203(y), stating that the employees "are cross-trained as firefighters in accordance with State law and local ordinances which would give them the legal authority to engage in fire suppression, their job description would include the responsibility of fire suppression as employees of a county fire department [through the provision of emergency medical services at fire, accident, or disaster scenes], and they would respond to all emergency calls (fire and medical) to provide emergency medical services." *Id.* at 2.

**B.**   **Plaintiffs are employees engaged in fire protection activities as defined by § 203(y) and therefore fall within the partial overtime exemption of § 207(k).**

*1.  Plaintiffs are trained in fire suppression.*

The undisputed evidence demonstrates that Plaintiffs are "trained in fire suppression" and thus satisfy this prong of the Section 203(y) test. Indeed, Plaintiffs admit in written discovery that they "received initial fire training." *See* Ex. X at App. 855-944 (Pls' Responses to Def's First Requests for Admission), at 1. Plaintiffs also testified that they are "trained in fire suppression." Ex. I at App. 515-16 (Adams Dep. 79:25-80:5); Ex. J at App. 537 (Bird Dep. 66:12-20); Ex. K at App. 556 (Brooks Dep. 73:19-20); Ex. P at App. 678 (Musick Dep. 25:14-16) Ex. S at App. 758 (Ramirez Dep. 61:8-9); Ex. T at App. 769 (Reeder Dep. 67:24-68:3); Ex. V at App. 830 (Thompson Dep. 72:15-24); Ex. W at App. 849 (Weber Dep. 67:3-6). In addition, Plaintiffs Adams, Gaither, Posey, Ramirez, Schauer, Thompson, and Weber were trained, and worked as firefighters before their employment with DFW. Exs. F-3; F-7; F-12; F-13; F-15; F-16; F-17 at App. 284-87, 318-21, 338-73 (Employment Applications for Plaintiffs Adams, Gaither, Posey, Ramizex, Schauer, Thompson, and Weber). All other Plaintiffs attended a fire academy, paid for by DFW, and during which Plaintiffs were paid by DFW.[24]

Plaintiffs, regardless of their firefighting experience, received several hundred hours of classroom and practical instruction in all essential fire suppression operations and topics, in order to be certified as firefighters, and aircraft rescue firefighters by the TCFP. Ex. F-18 at App. 374-419 (Plaintiff's certificates for Certification by the TCFP); Ex. L at App. 565-66 (Cowles Dep. 56:22-57:8). They performed skills evaluations demonstrating their ability to handle various fire suppression tasks. Ex. L at App. 569 (Cowles Dep. 65:10-24). Each Plaintiff was tested on these

---

[24] Note that Plaintiff Ramirez was also required by DFW to attend a fire academy, as a result of his certification from the TCFP expiring prior to his employment with DFW. Ex. S at App. 753 (Ramirez Dep. 46:16-47:6).

fire suppression operations and topics – **they would not have been eligible to become firefighters for DFW unless they passed these tests and completed this training**. Ex. B-3 at App. 14-19 (DPS promotions and transfers policy).

Plaintiffs also have required continuing education and in-service training, and the subject matter for these classes includes fire suppression topics. Ex. C-2 at App. 124-31 (DPS training logs, showing fire suppression training undergone by Plaintiffs); Ex. C-3 at App. 137-41 (DPS training logs, showing ARFF training undergone by Plaintiffs). Plaintiffs—and all DFW firefighters, including those in the EMS division—received significant training in fire suppression. Ex. L at App. 567-68 (Cowles Dep. 60:13-61:6); Ex. V at App. 820-21 (Thompson Dep. 54:20-55:5). Specifically, Plaintiffs admit to receiving training on the following topics: (1) Fire Service Communications; (2) Basic Fire Technology; (3) Aircraft Rescue and Fire Fighting; (4) Fire Service Personal Protective Equipment; (5) Portable Fire Extinguisher Basics; (6) High-Rise Fire Operations; and (7) Fire Streams, Patterns, & Nozzles. Ex. L at App. 588-90 (Cowles Dep. 126:22-128:1); Ex. N at App. 647-48 (Harmon Dep. 127:6-128:13); Ex. O at App. 663-64 (Hill Dep. 73:12-74:8); Ex. V at App. 820-21 (Thompson Dep. 54:20-55:5); Ex. W at App. 846-47 (Weber Dep. 48:23-49:4). The purpose of all this training is to provide DFW firefighters with the skills necessary to safely handle scenarios on fire grounds, and perform firefighting duties if called upon to do so. Ex. U at App. 788, 790 (Schauer Dep. 53:7-15; 55:4-21).

Plaintiffs also **exceed** the minimum training standards set by the TCFP, the governing body overseeing firefighters in Texas. TEX. GOV'T CODE § 419.001 *et seq.*; *see also Allen v. City of Texas City*, No. G-10-176, 2012 U.S. Dist. LEXIS 30308, at *11 (S.D. Tex. Mar. 6, 2012) (stating that the only training required to be a firefighter in Texas is a TCFP-approved basic structure fire suppression course, and an emergency medical training course). Further, Plaintiffs admit that this

28

level of training and certification by the TCFP was a required part of their job, and that if they lost the certifications, they would lose their jobs. Ex. J (Adams Dep. 36:24-40:2); Ex. L at App. 591-93 (Cowles Dep. 137:11-139:1); Ex. M at App. 609 (Gaither Dep. 64:6-22) Ex. V at App. 830-32 (Thompson Dep. 72:15-24).

The TCFP determined that to be trained in fire suppression, a basic level of firefighting skills and techniques are required, and that this level of training qualifies individuals (including Plaintiffs) to engage in a myriad of fire suppression activities. 37 TEX. ADMIN. CODE § 423.3 (listing minimum standards for "Basic Structure Fire Protection Personnel Certification"). Plaintiffs were trained for, and certified as, Basic Structure Fire Protection Personnel. Ex. F-18 at App. 374-419 (Plaintiffs' certificates for Certification by the TCFP). That training that rises to the level of certification as a firefighter by the state is sufficient to satisfy § 203(y)'s requirement that Plaintiffs be "trained in fire suppression." *See Huff v. Dekalb County*, No. 1:05-cv-1721-WSD, 2007 U.S. Dist. LEXIS 6398, at *12 n.8 (N.D. Ga. Jan. 30, 2007) (rejecting plaintiffs' arguments that training beyond the level required by the state of Georgia is insufficient to be considered trained in fire suppression within the meaning of the statute); *see also* Opinion Letter FLSA2005-9NA, at 2 (employees being "cross-trained as firefighters in accordance with State law and local ordinances" is sufficient to establish training the § 203(y) test); U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter FLSA2009-19, at 2 (Jan. 16, 2009) ("Opinion Letter FLSA 2009-19") (airport employees who "receive training consistent with state regulations" satisfy the training requirement for the § 203(y) test).

Further, a more specialized certification specific to ARFF Personnel was set by the TCFP, which requires certification as a Basic Structure Fire Protection Personnel as a prerequisite. 37 TEX. ADMIN. CODE § 423.203 (listing minimum standards for "Basic Aircraft Rescue Fire Fighting

29

Personnel Certification"). Plaintiffs were also certified to *at least* this standard, and commonly hold more advanced certifications. Ex. F-18 at App. 374-419 (Plaintiff's certificates for Certification by the TCFP); Ex. I at App. 505-09 (Adams Dep. 36:24-40:2); Ex. J at App. 530-31 (Bird Dep. 41:18-42:2; 42:13-19); Ex. K at App. 550 (Brooks Dep. 44:11-23); Ex. L at App. 591-93 (Cowles Dep. 137:11-139:1); Ex. M at App. 610 (Gaither Dep. 66:9-14); Ex. N at App. 631-32, 634-35 (Harmon Dep. 50:22-51:1; 54:17-22; 60:5-10); Ex. P at App. 681-82 (Musick Dep. 36:8-15; 41:14-24); Ex. U at App. 786 (Schauer Dep. 51:5-22); Ex. W at App. 844-45 (Weber Dep. 45:13-46:2). To achieve its goals of rising above and beyond the minimum certification standards, DFW spends thousands of dollars each year ensuring that its EMS division personnel receive more than the required level of training in fire suppression. Ex. C at App. 59-61 ¶¶3-12 (Rhodes Decl.). Plaintiffs' advanced certifications show their participation and high level of training in fire suppression, and also show Plaintiff's responsibility to engage in fire suppression. *See Lang v. City of Omaha*, 186 F.3d 1035, 1038 (8th Cir. 1999) (holding that participation in activities "required for and directly concerned with the control or extinguishment of fires" show the individual's responsibility to engage in fire suppression).

Under these circumstances, the undisputed evidence conclusively shows that Plaintiffs are "trained in fire suppression" and meet this prong of the § 203(y) test.

> 2.  *Plaintiffs have the legal authority and responsibility to engage in fire suppression.*

Plaintiffs have the "legal authority and responsibility to engage in fire suppression" and meet this second of the § 203(y) test as well.

Plaintiffs, by virtue of their certification as firefighters by the TCFP, have the legal authority and responsibility to engage in fire suppression under § 203(y). All Plaintiffs are certified in both Structure Fire Suppression and as Aircraft Rescue Firefighters, as determined by the TCFP.

Ex. F-18 at App. 374-419 (Plaintiff's certificates for Certification by the TCFP). Thus, Plaintiffs are certified as firefighters by the State of Texas, and have the legal authority and responsibility to engage in fire suppression. *See Lang*, 186 F.3d at 1038 ("[The plaintiffs] have received all training required by law to perform firefighting, and they are sworn and trained firefighters and thus have the legal authority and responsibility required by the third part of the test."); *see also* Opinion Letter FLSA2005-9NA, at 2 (stating that "State law and local ordinances" provide legal authority to engage in fire suppression). Plaintiffs admitted as much, that their certifications by the TCFP establish that they have legal authority to engage in fire suppression. Ex. B at App. 8 ¶¶11-13 (McKinney Decl.); Ex. J at App. 539 (Bird Dep. 81:5-7); Ex. R at App. 731 (Posey Dep. 36:4-9); Ex. S at App. 747-48 (Ramirez Dep. 34:17-35:2); Ex. T at App. 769 (Reeder Dep. 67:14-19); Ex. V at App. 824 (Thompson Dep. 65:7-16); Ex. W at App. 850 (Weber Dep. 68:8-17).

In a desperate attempt to sustain their claims, some Plaintiffs provided self-serving and unbelievable sworn testimony denying responsibility for fire suppression. The issue of what constitutes "responsibility" has not been substantively addressed by the Fifth Circuit, or any court within the Fifth Circuit. The Eleventh Circuit addressed "responsibility" under the § 203(y) exemption. *Huff v. Dekalb County,* 516 F.3d 1273 (11th Cir. 2008). After reviewing applicable precedent and the legislative history surrounding the § 203(y) amendment, that court held that "responsibility" does *not* by itself, require any actual engagement in fire suppression. *Id.* at 1281. Instead, the court found that "responsibility does not imply any actual engagement in fire suppression, and employees may have a responsibility to engage in fire suppression without ever actually engaging in fire suppression themselves. This responsibility is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future." *Id.* (internal quotation marks omitted). That opinion mirrors the Fifth Circuit's line of reasoning, where the

31

court held that emergency medical personnel trained as firefighters and attached to a fire department fall under this exemption "even though they may spend one hundred percent of their time responding to medical emergencies." *McGavock*, 452 F.3d at 427; *see also Lang*, 186 F.3d at 1038 ("**Even if the plaintiffs performed nothing other than medical duties at a fire, they nevertheless fall within the exemption**.") (emphasis added).

DFW's firefighters in the EMS division—including Plaintiffs—have both the legal authority and responsibility to engage in fire suppression activities. It is the policy of DFW that firefighters in the EMS division be trained in and legally authorized to perform fire suppression when necessary or called upon to do so by their supervisor.

As previously described, Plaintiffs agreed to abide by the DPS Code of Conduct, where they recognized their responsibility to engage in fire suppression. Ex. J at App. 525 (Bird Dep. 33:13-22); Ex. L at App. 585 (Cowles Dep. 108:8-10); Ex. O at App. 665-66 (Hill Dep. 99:25-100:3; 101:1-14); Ex. V at App. 829 (Thompson Dep. 71:1-7). The code of conduct states in relevant part:

> 3.7    Line of Duty
> 3.7.1   All employees must remain ready to respond to any call or perform any necessary public safety function.
> 3.7.2   All appropriate personnel must report, in a timely manner, to the scene of any fire, crash, disturbance, or breach of the peace occurring within that unit's vicinity, and employ best efforts to restore normal conditions, taking such actions as may be necessary.
> 3.7.3   Although regular hours of duty are assigned, it is the duty of every employee, when within the area of the Airport, to preserve the public peace, and protect life and property as appropriate.

Ex. B-5 at App. 25-33 (DPS Code of Conduct). Plaintiff Hill testified that this code shows that Plaintiffs have the responsibility to engage in fire suppression. Ex. O at App. 665-67 (Hill Dep. 99:25-100:3; 101:1-14).

32

Plaintiffs' responsibility to engage in fire suppression is further shown by how the EMS division was dispatched to emergency calls. Between January 2017 and January 2018, both the Fire Rescue and EMS divisions were jointly dispatched to over 77% of emergency calls. Ex. B-8 at App. 50 (DPS logs showing a breakdown of dispatch calls between the EMS division and Fire Rescue division, including by call type, percent occurrence of each call type, and which division was dispatched to each call). By contrast, only in a fraction of 1% of calls did personnel in the EMS division respond alone. *Id.* Plaintiffs as well as firefighters in the Fire Rescue division are dispatched to respond to fire emergencies, and thus have the responsibility to engage in fire suppression when responding to those emergencies, even if every individual does not actually engage in fire suppression in response to each emergency call. Plaintiff Schauer admitted that his job duties included "respond[ing] to calls and perform[ing] general fire/rescue work," responding to "fire incidents" and "perform[ing] structural and aircraft fire rescue duties including but not limited to responding to alarms" when they are dispatched to those incidents. Ex. U at App. 798 (Schauer Dep. 109:5-24).

Thus, Plaintiffs are an integral response of the DFW Fire Services team because they are trained in fire suppression so that they can function on fire grounds and perform fire suppression tasks if required to do so. And DFW expects and requires Plaintiffs to be able to perform these duties sufficiently if necessary. Ex. B at App. 8 ¶13 (McKinney Decl.). Further, Plaintiffs admit that they have never been told that they could not engage in fire suppression, and no DFW policy limits their ability to engage in fire suppression. Ex. I at App. 510 (Adams Dep. 45:18-25); Ex. K at App. 554 (Brooks Dep. 60:9-17); Ex. S at App. 755-56 (Ramirez Dep. 54:1-55:6); Ex. V at App. 826-27 (Thompson Dep. 68:25-69:12).

33

Plaintiffs' responsibility to actively participate in fire rescue and render fire suppression as needed is further demonstrated by the fact that Plaintiffs were assigned an individual set of PPE, including a coat, pants, gloves, boots, a helmet, a hood, and custom-fit SCBA mask. Ex. D at App. 183 ¶10 (Smith Decl.); Ex. D-1 at App. 185-93 (DPS Policy on PPE issued to Fire Services Firefighters); Ex. D-2 at App. 194 (Specific PPE issued to Plaintiff Patterson); Ex. G at App. 497-98 (Boyton Decl.); Ex. H at App. 499-500 (Kurtulan Decl.); Ex. I at App. 511 (Adams Dep. 71:20-72:24); Ex. J at App. 533 (Bird Dep. 51:9-14); Ex. K at App. 551-52 (Brooks Dep. 52:20-53:19); Ex. L at App. 576 (Cowles Dep. 97:25-98:5); Ex. M at App. 613 (Gaither Dep. 123:2-9); Ex. N at App. 649 (Harmon Dep. 152:10-13); Ex. O at App. 668 (Hill Dep. 102:7-16); Ex. P at App. 685-86 (Musick Dep. 95:19-96:7); Ex. Q at App. 708 (Patterson Dep. 54:12-57:1); Ex. S at App. 749-50, 752 (Ramirez Dep. 36:15-37:1; 43:7-25); Ex. U at App. 795-97 (Schauer Dep. 106:13-108:3); Ex. V at App. 817 (Thompson Dep. 45:6-13); Ex. W at App. 841 (Weber Dep. 37:7-38:16). Plaintiffs are also provided access to SCBAs, which are made available on fire apparatuses and in the Fire Training and Research Center. Ex. D at App. 182-83 ¶¶5-6 (Smith Decl.); Ex. J at App. 532 (Bird Dep. 48:15-17); Ex. P at App. 688 (Musick Dep. 105:5-25); Ex. Q at App. 713 (Patterson Dep. 89:16-22); Ex. R at App. 732-33 (Posey Dep. 73:9-74:17); Ex. S at App. 751 (Ramirez Dep. 39:15-25); Ex. U at App. 797 (Schauer Dep. 108:7-18). Every fire apparatus is assigned at least one extra SCBA (or two SCBAs, in the case of an MAV), that may be used by other Firefighters (including Plaintiffs) dispatched to a fire scene. Ex. D at App. 183 ¶¶7-8 (Smith Decl.). In a typical ARFF response, ten extra SCBAs are available on these apparatuses. *Id.* As a result, an SCBA is made available to Plaintiffs when dispatched to the fire scene. *Id.* Plaintiffs are also given training, to familiarize them with use of SCBA, while wearing their full set of PPE. Ex. N at App. 636 (Harmon Dep. 80:7-25); Ex. P at App. 683 (Musick Dep. 44:9-45:20); Ex. Q at

App. 714 (Patterson Dep. 98:1-100:14); Ex. R at App. 732-33 (Posey Dep. 73:9-74:17); Ex. T at App. 772 (Reeder Dep. 115:6-18); Ex. U at App. 791(Schauer Dep. 67:11-14); Ex. W at App. 843 (Weber Dep. 43:14-23). DFW provides this equipment so that Plaintiffs will have the basic firefighting equipment available to them if they engage in fire suppression activities. *See, e.g.*, Ex. I at App. 513-14 (Adams Dep. 74:23-75:1).

While Plaintiffs may attempt to depict themselves as paramedics but not firefighters, such a distinction is of no consequence. And although Plaintiffs testified that when dispatched to fire incidents, it was only to render medical aid, such testimony establishes that Plaintiffs engaged in fire suppression because they were necessary (both legally and practically) to the fire suppression operation. *See, e.g.*, Ex. L at App. 574-75 (Cowles Dep. 88:24-89:4); Ex. S at App. 756 (Ramirez Dep. 55:13-20); Ex. W at App. 852 (Weber Dep. 84:4-12). Yet as Plaintiff Musick explained, "90 percent of what fire departments do is – is EMS." Ex. P at App. 695 (Musick Dep. 137:7-11). Regardless, Plaintiffs Harmon and Ramirez testified that they did in fact engage in fire suppression. Ex. N at App. 638-43 (Harmon Dep. 102:20-104:17; 108:25-110:22); Ex. S at App. 760 (Ramirez Dep. 75:2-18).

As noted above, "[e]ven if the plaintiffs performed nothing other than medical duties at a fire, they nonetheless fall within the exemption." *Lang*, 186 F.3d at 1038. *Lang* held that plaintiffs being dispatched to fire incidents only to render medical aid <u>supports</u> a conclusion that such individuals fall under the § 207(k) exemption, because "**standby medical support is an activity which is required for and directly concerned with the control or extinguishment of fires,**" and that "**[s]imply because the division of labor and the development of specialties at a fire scene relegates the paramedics to a medical support function does not mean that they are any less directly concerned with the firefighting effort than the individual who runs into a**

35

**burning building with a hose.**" *Id.; see also McGavock*, 452 F.3d at 427 ("The only purpose of Congress in amending [the FLSA to add Section 203(y)] that is clear to us, **is that it intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies**.") (emphasis added). As a result of their training in both fire suppression and as paramedics, and the PPE and SCBA that Plaintiffs are provided and have access to, any employee—including Plaintiffs—can respond to any emergency call to which DFW has a duty to respond, including fires. All of this evidence exists in proving that Plaintiffs have both the legal authority and responsibility to engage in fire suppression activities within the meaning of § 203(y).

> 3.  *Plaintiffs are employed by a fire department of a municipality, county, fire district, or state, and respond to emergency situations where life, property or the environment is at risk.*

There is no dispute that Plaintiffs were employed by DFW, which is authorized by the Texas Municipal Airports Act to exercise, on behalf of the Cities of Dallas and Fort Worth, all of the powers of each with respect to DFW Airport. Ex. A at App. 01-02 (Constantine Decl.). Thus, DFW's DPS constitutes a fire department of a municipality for the purposes of 203(y). *Id.*; *See Kipple v. Monroe County*, 847 F. Supp. 2d 471, 476, 479 (W.D.N.Y. 2012) (holding that the Department of Aviation of Monroe County, responsible for the operations of the Greater Rochester International Airport, constituted a fire department of a county for the purposes of § 203(y), even where fire prevention and control was "a small component of the duties and responsibilities of the Department of Aviation."); *see also* Opinion Letter FLSA2009-19, at 3 (airport firefighters in public Transportation Authority are employees of a "political subdivision" and are within the purview of § 203(y)).

It is further undisputed that Plaintiffs responded to emergency situations where life, property, or the environment are at risk. *See* 29 U.S.C. § 203(y)(2). Plaintiffs admitted that they responded to such emergency situations. *See* Ex. X at App. 855-944 (Pls' Responses to Def's First Requests for Admission), at 5; *see also* Ex. J at App. 539 (Bird Dep. 81:17-19); Ex. K at App. 557 (Brooks Dep. 82:2-4); Ex. L at App. 572-73, 578 (Cowles Dep. 86:22-87:1; 100:12-18); Ex. M at App. 606 (Gaither Dep. 60:24-61:4); Ex. N at App. 625 (Harmon Dep. 36:17-19); Ex. O at App. 660 ( Hill Dep. 49:15-23; 70:24-71:11); Ex. P at App. 679 (Musick Dep. 26:15-20); Ex. Q at App. 718 (Patterson Dep. 128:8-11); Ex. S at App. 759 (Ramirez Dep. 71:10-71:15); Ex. T at App. 768 (Reeder Dep. 49:10-12); Ex. U at App. 784-85 (Schauer Dep. 49:19-50:3); Ex. V at App. 825 (Thompson Dep. 66:17-24); Ex. W at App. 850-51 (Weber Dep. 68:18-69:1); *see also* Ex. G at App. 497-98 (Boyton Decl.); *see also* Ex. H at App. 499-500 (Kurtulan Decl.). Their responsibility to respond to such situations is a duty that Plaintiffs take seriously. Ex. L at App. 586 (Cowles Dep. 116:23-117:19).

Plaintiffs further admit that they were trained, even in live fire drills, to respond to such emergency situations. Ex. L at App. 570-71 (Cowles Dep. 71:14-72:12); Ex. Q at App. 707 (Patterson Dep. 51:10-16). Section 203(y) states only that to meet that factor of the statutory definition, an employee must engage in response to emergency situations generally. Therefore, even if Plaintiffs never responded to a fire call, or engaged in the prevention, control, and extinguishment of fires, they nevertheless responded "to emergency situations where life, property, or the environment is at risk." *See McGavock,* 452 F.3d at 427 (holding that EMTs trained as firefighters are considered employees engaged in fire protection activities "even though they may spend one hundred percent of their time responding to medical emergencies").

Plaintiffs meet these final factors of the § 203(y) definition for employees engaged in fire protection activities. For the above reasons, DFW requests the Court find that Plaintiffs are employees engaged in fire suppression activities under § 203(y), and are therefore subject to the overtime threshold delineated in § 207(k).

### C.   Alternatively, as a matter of law, a two-year statute of limitations applies because Plaintiffs cannot prove that DFW willfully violated the FLSA.

Alternatively, if this Court does not find at this stage that Plaintiffs are subject to the overtime thresholds of § 207(k), DFW is entitled to a two-year statute of limitations on Plaintiffs' claims for back pay. Unless an employee can prove that an employer's violation of the FLSA was willful, the statute of limitations under the FLSA is two years. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) (*citing* 29 U.S.C. § 255(a)). In *McLaughlin*, the Supreme Court held that in order for an employer's violation to be deemed willful, there must be evidence that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. The Court explained that the word "willful" under the FLSA is synonymous with "deliberate" and "intentional." *Id.* Plaintiffs bear the burden of proving a willful violation. *See id.* at 135.

DFW's classification of the paramedics as employees engaged in fire protection activities cannot be considered a willful violation of the FLSA. Plaintiffs received training in fire suppression, have the legal authority to engage in fire suppression by the TCFP, are given the responsibility to engage in fire suppression by DFW, and respond to emergency situations where life, property, or the environment is at risk.

Also, DFW could not have willfully violated the FLSA where it took steps to comply with the FLSA. Indeed, DFW's legal department and supervisors communicated with each division in clear efforts to ensure that Plaintiffs were covered under § 207(k). Ex. A-2 at App. 06 (interoffice

38

memorandum provided to a DPS employee regarding the DPS's Firefighters being subject to the partial overtime exemption).

Plaintiffs have no evidence of any willful violation and thus fail to meet their burden to prove a willful violation. Thus, the two-year statute of limitations applies to this case.

> **D.    Alternatively, as a matter of law, Plaintiffs cannot recover liquidated damages because DFW acted in good faith.**

Alternatively, if this Court does not find at this stage that Plaintiffs are subject to the overtime thresholds of § 207(k), Plaintiffs cannot recover liquidated damages. When an employer proves that the act or omission giving rise to FLSA liability was done in good faith, and if it had reasonable grounds for believing that its conduct did not violate the FLSA, then a court may decline to award liquidated damages. 29 U.S.C. § 260.

Courts have held that public employers who mistakenly misclassified employees as "fire protection employees" under § 207(k) should not be penalized with an additional award of liquidated damages. *See Schneider v. City of Springfield*, No. C-3-96-62, 2000 U.S. Dist. LEXIS 6217, at *11-24 (S.D. Ohio Mar. 30, 2000) (firefighter dispatchers could not recover liquidated damages because the defendant made good-faith attempt to comply with the FLSA and had reasonable grounds for belief that plaintiffs were covered by § 207(k)). That case involved treating dispatchers - **who are non-emergency responders**. Here, Plaintiffs are vital emergency responders and admittedly meet at least half of the requirements to be exempt. 29 U.S.C. § 203(y) (Plaintiffs admit they engaged in "the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk") *See* Ex. X at App. 855-944 (Pls' Responses to Def's First Requests for Admission), at 5; *see also* Ex. J at App. 539 (Bird Dep. 81:17-19); Ex. K at App. 557 (Brooks Dep. 82:2-4); Ex. L at App. 572-73, 578 (Cowles Dep. 86:22-87:1; 100:12-18); Ex. M at App. 606-07 (Gaither Dep. 60:24-61:4); Ex. N at App. 625

(Harmon Dep. 36:17-19); Ex. O at App. 660-62 ( Hill Dep. 49:15-23; 70:24-71:11); Ex. P at App. 679 (Musick Dep. 26:15-20); Ex. Q at App. 718 (Patterson Dep. 128:8-11); Ex. S at App. 759 (Ramirez Dep. 71:10-15); Ex. T at App. 768 (Reeder Dep. 49:10-12); Ex. U at App. 784-85 (Schauer Dep. 49:19-50:3); Ex. V at App. 825 (Thompson Dep. 66:17-24); Ex. W at App. 850-51 (Weber Dep. 68:18-69:1). Moreover, it is clear that they took this responsibility seriously while employed by DFW. Ex. L at App. 586-87 (Cowles Dep. 116:23-117:19).

Regarding the other half of the test (whether Plaintiffs "trained in fire suppression, ha[ve] the legal authority and responsibility to engage in fire suppression, and [are] employed by a fire department of a municipality, county, fire district, or State"), DFW is entitled to summary judgment. But if summary judgment is not granted, there is certainly a showing that DFW acted in good faith and had reasonable grounds for believing that its conduct did not violate the FLSA. Indeed, DFW's legal department provided guidance regarding the partial exemption. Ex. A-2 at App. 06 (interoffice memorandum provided to a DPS employee regarding the DPS's Firefighters being subject to the parties overtime exemption). Also, leaders of DFW worked hard to ensure compliance. Ex. B-9 at App. 51-58 (Microsoft PowerPoint slideshow used in connection with informing and providing guidance to the DPS's Firefighters regarding the partial overtime exemption). And DFW leaders clearly and transparently communicated to the workers in the EMS division (*i.e.*, Plaintiffs) that they were partially exempt. *Id.*

Further, Plaintiffs admitted that that they are aware of the circumstances where they will or will not get overtime pay, that they know how many hours they must work before receiving overtime pay, and that DFW was transparent and clearly communicated with Plaintiffs about when to expect overtime pay. Ex. O at App. 668-69 (Hill Dep. 102:19-103:7). Plaintiffs admitted that if they had an issue with their pay, they would not have had any concerns about reporting such issues

to DFW's human resources or payroll department. Ex. L at App. 594 (Cowles Dep. 140:7-14); Ex. O at App. 669 (Hill Dep. 103:8-15). And finally, Plaintiffs admitted that DFW was not trying to avoid paying overtime, or trying to underpay them. Ex. P at App. 696-97 (Musick Dep. 147:20-148:15); Ex. Q at App. 706 (Patterson Dep. 47:2-5). Yet despite these admissions, no Plaintiff ever complained, or raised the issue of overtime pay with DFW prior to the filing of this lawsuit. Ex. J at App. 538 (Bird Dep. 77:5-7); Ex. V at App. 828 (Thompson Dep. 70:10-13).

Any of those points would be enough to show DFW's good faith and reasonable grounds. Thus, DFW asks the Court to grant summary judgment on Plaintiffs' claims for liquidated damages.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, DFW respectfully requests the Court grant this Motion for Summary Judgment to dismiss Plaintiffs' claims against DFW with prejudice, that Plaintiffs' take nothing, and that DFW be awarded such other and further relief to which it is justly entitled.

Respectfully submitted,


*s/ Greg McAllister*
Greg McAllister
Texas State Bar No. 24071191
gmcallister@littler.com

**LITTLER MENDELSON, P.C.**
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)

Kimberly R. Miers
Texas State Bar No. 24041482
kmiers@littler.com

**LITTLER MENDELSON, P.C.**
100 Congress Avenue
Suite 2000
Austin, TX 78701
512.982.7250
512.982.7248 (Fax)

**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE


On January 9, 2020, the foregoing document was e-filed, which served counsel of record via ECF.


*s/ Greg McAllister*
Greg McAllister


4840-1646-4046.10 086340.1003

42