IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOUGLAS PATTERSON, Individually And on Behalf of All Others Similarly Situated Under 29 U.S.C. 216(b), <br><br> Plaintiffs, <br><br> v. <br><br> DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD, <br><br> Defendant. | §§§§§§§§§§§§§ | Civil Action No. 3:18-CV-00307-E |

# MEMORANDUM OPINION AND ORDER

Plaintiffs, current or former employees of Defendant Dallas/Fort Worth International Airport Board (DFW), bring this action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (FLSA). *See* 29 U.S.C. § 216(b). Before the Court are DFW's Motion for Summary Judgment (Doc. 63) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 67). Having considered the motions, the parties' respective responses and replies, and applicable law, the Court finds both motions should be granted in part and denied in part for the following reasons.

## BACKGROUND

DFW operates the Dallas/Fort Worth International Airport (Airport) on behalf of the Airport's owners, the cities of Dallas and Fort Worth (Doc. 65-1).[1] The Airport has a Department of Public Safety (DPS) with two divisions: Police Services and Fire Services (*Id*.). Fire Services employs Firefighters in four different divisions: Fire Rescue, Emergency Medical Services (EMS), Career Development, and Fire Prevention and Planning (Doc. 65-4). To become and remain a

---

[1] DFW is comprised of members representing the two cities and one alternative, non-voting member that represents the host cities of Irving, Grapevine, Euless, and Coppell (Doc. 65-1).

Firefighter, an employee must be certified by the Texas Commission on Fire Protection (TCFP) as Basic Structure Fire Protection Personnel and Basic Aircraft Rescue Fire Fighting Personnel (Doc. 65-13). Individuals with prior experience and the required TCFP certifications are hired as Firefighters (Doc. 65-4). Those without prior experience or certifications are hired as Firefighter Recruits (*Id*.). After receiving the required certifications and a twelve-month probationary period, a Firefighter Recruit is promoted to Firefighter (*Id*.).

Plaintiffs, except one who served as a Captain, were employed as Firefighters in the EMS division during the three years prior to commencement of this action (Doc. 69, pp. 161, 548, 552-57). They claim DFW failed to properly compensate them for overtime work. The FLSA generally requires an employer to pay employees one-and-a-half times their regular rate of pay when they work more than forty hours per week. 29 U.S.C. § 207(a). An exemption, however, applies to public agency employees in fire protection activities. 29 U.S.C. § 207(k).[2] Under section 207(k), employees in fire protection activities are subject to an increased overtime threshold. *Id*.

Both DFW and plaintiffs have moved for summary judgment on section 207(k)'s applicability to this case. DFW maintains the section 207(k) exemption applies as a matter of law because plaintiffs were employees in fire protection activities; plaintiffs contend the opposite. Plaintiffs also assert they are entitled to liquidated damages and, regardless of whether the

---

[2] "No public agency shall be deemed to have violated subsection (a) with respect to the employment of any employee in fire protection activities … if (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(k).

2

exemption applies, DFW failed to properly calculate their overtime compensation. In the event the exemption does not apply, DFW alternatively contends plaintiffs cannot recover liquidated damages and the two-year statute of limitations applies to their claims.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Id.*; *Anderson*, 477 U.S. at 254-55. Cross-motions for summary judgment are to be considered independently with the facts and resulting inferences viewed in favor of the nonmovant. *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

3

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Id.* at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party … only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

## ANALYSIS

### A. *Employees in Fire Protection Activities*

Both parties assert the summary judgment evidence establishes whether the FLSA section 207(k) exemption applies as a matter of law. The ultimate decision whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 820 (5th Cir. 2003). "With respect to the underlying facts, the employer has the burden of establishing that an exemption applied by a preponderance of the evidence." *Fraser v. Patrick O'Connor & Assoc., L.P.*, 954 F.3d 742, 745 (5th Cir. 2020). Although the Supreme Court previously held that FLSA "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), more recently the Court determined the exemptions should instead be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, — U.S. —, 138 S. Ct. 1134, 1143, 1148 n.7 (2018).

Section 203(y) of the FLSA defines an "employee in fire protection activities" as:

an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who—

4

>   (1)   is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
>
>   (2)   is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y). Accordingly, to fall within the definition, an employee must: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or state; and (5) be engaged either (i) in the prevention, control, and extinguishment of fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk. *See Huff v. DeKalb County, Ga.,* 516 F.3d 1273, 1279 (11th Cir. 2008).

Plaintiffs do not dispute, and indeed have testified, that their employment as Firefighters in the EMS division required them to respond to emergency situations where life was at risk. Plaintiffs also clearly were trained in fire suppression. To obtain and keep their jobs as Firefighters, they were required to hold TCFP certifications in structure protection and aircraft rescue firefighting (Doc. 65-13). Plaintiffs also were required to, and did, undergo additional training beyond the minimum certification standards (*Id*.). Having graduated from fire academy and received their certifications, plaintiffs were trained in fire suppression for purposes of section 203(y). *See McGavock v. City of Water Valley*, 452 F.3d 423, 424 (5th Cir. 2006) (indicating graduates of fire academy were "trained in fire suppression"); *see also Huff v. Dekalb County*, No. 1:05-cv-1721-WSD, 2007 WL 295536, at *4 n.8 (N.D. Ga. Jan. 30, 2007), *aff'd*, 516 F.3d 1273 (state certification sufficient to be considered trained in fire suppression within meaning of section 203(y)); U.S. Dep't of Labor, Wage & Hour Division, Opinion Letter FLSA2009-19, at 2 (Jan. 16, 2009) (airport

5

employees who "receive training consistent with state regulations" satisfy the training requirement for the § 203(y) test).[3]

Plaintiffs also were employed by a fire department of a municipality, county, fire district, or State. Plaintiffs were employees of DFW in DPS, specifically the Fire Services division, a fire department.[4] DFW operates the Airport on behalf of its municipality owners (Doc. 65-1). *See* Tex. Transp. Code Ann. §§ 22.011, 22.017, 22.074 (authorizing local governments to delegate power to a joint board regarding an airport). And, the Texas Transportation Code authorizes boards, like DFW, to, among other things, operate, regulate, protect and police an airport and provides that the boards' powers are "public and governmental functions, exercised for a public purpose, and matters of public necessity." Transp. §§ 22.002, 22.074(b); *cf. Kipple v. Monroe County, N.Y.*, 847 F. Supp.2d 471, 479 (W.D.N.Y. 2012) (fire department within larger public agency, but operated by county aviation authority, meets the statutory definitions of 29 U.S.C. §§ 203(y) & 207(k)).

At issue, then, remains whether plaintiffs had the legal authority and responsibility to engage in fire suppression. Except for two plaintiffs who each participated in a live fire training exercise,[5] plaintiffs did not, and were not asked to, perform any fire suppression activities while working in the EMS division during the three years prior to this suit's filing[6] (Doc. 69, pp. 595-

---

[3] The opinion letter is available at http://www.dol.gov/WHD/opinion/FLSA/2009/2009_01_16_19_FLSA.pdf (last accessed on September 25, 2020). The Court recognizes this and other Department of Labor (DOL) opinion letters are entitled only to respect "to the extent that [their] interpretations have the power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

[4] The mission of Fire Services is to "support and exceed the requirement of Airport Certification requirements and to be a Global leader in responsiveness to customer needs and set the standard for fire service delivery" (Doc. 65-5). DPS's mission is to "provide the highest level of professional services through response and recovery from natural or manmade events that threaten lives, critical assets, or business continuity" (*Id.*).

[5] Plaintiff Angie Harmon testified that she participated in a wildland fire training on Airport property as a member of a Texas Intrastate Fire Mutual Aid System team (Doc. 66-44, pp. 23-25). Plaintiff Israel Ramirez testified that he took part in a live fire training, mainly to serve as a translator for visiting firefighters from Costa Rica (Doc. 66-49, p. 25).

[6] A two-year statute of limitations normally applies to a plaintiff's FLSA claim, but it can be extended to three years if the plaintiff shows the violation was willful. *See* 29 U.S.C. § 255(a).

6

600).  Instead, plaintiffs provided medical services and were assigned to a Mobile Intensive Care Unit (MICU) or Trauma Unit 611, which was used for mass casualty incidents and carried medical and trauma supplies (Doc. 69, pp. 276, 289, 376, 425, 454, 545, 602-03).

The MICUs and Trauma Unit 611 did not carry equipment associated with fire rescue or fire suppression (Doc. 69, pp. 266, 353, 380, 445, 619-22, 627-28).  Plaintiffs were issued bunker gear, which consisted of fire-resistant personal protective equipment including a firefighting coat, pants, gloves, boots, a helmet, a hood, and a custom-fit mask designed to be connected to a Self-Contained Breathing Apparatus (SCBA) (Doc. 65-22; Doc. 65-23).  Plaintiffs had their bunker gear with them when assigned to a shift, but there is no evidence they were required to wear it (Doc. 66-41, p. 12; Doc. 66-46, pp. 686-87; Doc. 69, pp. 238-39, 339-40, 402-03, 454).  SCBAs were not kept in MICUs or Trauma Unit 611, but were available on fire vehicles and in the Airport's Fire Training and Research Center (Doc. 65-22; Doc. 69, pp. 492, 623).  In a typical air rescue firefighting response, extra SCBAs were available for any Firefighter dispatched to the scene (Doc. 65-22).

Plaintiffs do not dispute that they were dispatched to fire scenes on occasion, but they were not required to respond to all fire alarms and fire scenes represented a small number of the incidents to which they were called upon to respond (*See* Doc. 72-12).  Further, they were never dispatched to an incident to engage in fire suppression or, once on scene, expected to engage in fire suppression (Doc. 69, p. 361; Doc. 79-1, pp. 33, 88; Doc. 79-2, p. 158; Doc. 79-4, p. 276).  Plaintiff Richard Bird testified that Battalion Chief Jim Hartman advised that Bird was not responsible for any fire suppression (Doc. 69, p. 545).  Plaintiff Ashley Posey also testified she was told she was not allowed to engage in fire suppression (*Id.*, p. 367).  Instead, Posey was told she was "on the ambulance" only while she worked in the EMS division and was not even allowed to "help like up hose or anything" (*Id.*, p. 366).

7

A DPS Job Description identifies the principal duties and responsibilities for DPS Firefighters (Doc. 66-2). It lists 22 non-exclusive duties and responsibilities, among which was performing general fire/rescue work "including but not limited to emergency medical scenes, fire incidents, environmental and hazardous material incidents, technical rescue incidents, search and rescue operations and other fire service related emergency requests" (*Id*.). According to the Job Description, DPS Firefighters may perform any or all of the duties "[d]epending on Fire Services area of assignment as determined by departmental requirements, and at the discretion of the department…" (*Id*.). The Job Description also notes that Firefighters "[m]ay work around fire, liquid fuels and hazardous chemicals" (*Id*.).

A separate DPS Standard Operating Procedure (SOP) addresses the policies, procedures, and responsibilities of the EMS division, which was "established to provide profession emergency medical services to patrons, employees and tenants of the airport" (Doc. 69, pp. 10-14, 616). The policies, procedures, and responsibilities relate to providing and reporting on medical services, including, among other things, maintaining treatment and rehabilitation areas and transporting patients in the event of structure fires, hazardous materials incidents, and aircraft alerts (*Id*.). The SOP, however, does not contain any procedures or responsibility related to fire suppression activities. Consistent with the SOP, the mission of the EMS division was to "provide exceptional prehospital medical care in both routine aviation and mass casualty environments by applying superior technical skills, compassion, and professionalism" (Doc. 69, p. 19).

In a declaration, DPS Fire Chief Brian McKinney averred that "Firefighters in the EMS division are an integral response of the DFW Fire Services team because they are trained in fire suppression, so that they can function on fire grounds and perform fire suppression tasks if required to do so" (Doc. 65-4). According to McKinney, [i]t is the policy of

8

[DFW] that Firefighters in the EMS division are trained in and legally authorized to perform fire suppression when necessary or called upon to do so by a supervisor" and, "when they respond to fire grounds as part of [DFW's] emergency response team, they can discharge their responsibility to engage in fire suppression when it is appropriate for them to do so" (*Id.*).

McKinney's declaration does not provide any evidence showing when an EMS division Firefighter may have been called upon to perform fire suppression or when it would have been necessary or appropriate for them to do so. Further, McKinney's declaration is written in present tense. In October 2019, EMS and Fire Services divisions were merged into a "Emergency Operations" division (Doc. 69, p. 559), and there is evidence that changes were made to EMS division Firefighter duties and responsibilities prior to the merger, but after this lawsuit was filed. For example, SCBA equipment was placed in MICUs (Doc. 69, p. 493). Plaintiffs become "part of fire" and "started integrating more with the firefighters," working on engines, becoming more involved in fire training," and, for the first time, were automatically dispatched to certain fire alarm calls (Doc. 69, pp. 229-31, 357-58, 438, 501). According to Randall Lee Rhodes, DFW's Rule 30(b)(6) representative and now-retired DPS Assistant Fire Chief, there were "steps" in place to effectuate the merger prior to 2018 (Doc. 65-11; Doc. 69, p. 561). However, several plaintiffs testified that their job duties did not change until after this lawsuit was filed in February 2018 (Doc. 69, pp. 229-30, 234, 357-58, 438, 501). Accordingly, it is unclear if McKinney's declaration pertains to DFW policy before this suit was filed.[7]

---

[7] DFW also submitted declarations, also written in the present tense, in which two non-plaintiff EMS division Firefighters aver that they have the legal authority and responsibility to engage in fire suppression and are provided with, or have access to, the equipment necessary to engage in fire suppression (Doc. 66-37; Doc. 66-38), and a DPS Code of Conduct. The Code of Conduct provides a line of duty description, which includes the following:

> 3.7.1. All employees must remain ready to respond to any call or perform any necessary public safety function.

9

There also is summary judgment evidence that plaintiffs were not appropriate personnel to respond to, at least, aircraft rescue and firefighting incidents. Specifically, the Airport's operation was subject to FAA regulations, which include a requirement that aircraft rescue and firefighters receive recurrent live fire drill training every twelve months (Doc. 69, pp. 637-38; Doc. 79-5, pp. 76-77). *See also* 14 C.F.R. § 139.319(i)(3). Plaintiffs did not receive the training because they were not part of the "frontline units," consisting of Mass Application Vehicles, Rapid Intervention Vehicles, and structural units, that responded to aircraft emergencies (Doc. 69, pp. 595-96, 598-601, 638).

No court in this circuit has specifically analyzed the meaning of responsibility to engage in fire suppression under section 203(y). The Fifth Circuit, however, has indicated the definition broadly applies to paramedics and EMTs. In *Vela v. The City of Houston*, the Fifth Circuit determined paramedic/EMTs employed by the City did not fall within the definition of an employee in fire protection activities under the Department of Labor regulations that preceded section 203(y) because they did not regularly respond with other fire department units to fires, crime scenes, riots, natural disasters and accidents. *See* 276 F.3d 659, 672 (5th Cir. 2001) (citing former 29 C.F.R. §§ 553.212, 553.215). The City requested that section 203(y) be applied retroactively, but the Court refused, in part because to do so would impair the paramedics' and EMTs' rights that existed and accrued prior to passage of section 203(y). *Id*. at 674. The Court reasoned that, "[u]nlike the pre-amendment statutory scheme, § 203(y) explicitly covers a broad class of employees, including

---

> 3.7.2. All appropriate personnel must report, in a timely manner, to the scene of any fire, crash, disturbance, or breach of the peace occurring within that unit's vicinity, and employ best efforts to restore normal conditions, taking such actions as may be necessary.
>
> 3.7.3. Although regular hours of duty are assigned, it is the duty of every employee, when within the area of the Airport, to preserve the public peace, and protect life and property as appropriate.

(Doc. 65-9). The code of conduct is dated July 9, 2018, months after plaintiffs filed this suit. There is no evidence that this, or a similar, code of conduct was in effect prior to the filing of this lawsuit.

paramedics, emergency related technicians, rescue works and ambulance personnel" … and dispenses with the rescue training and regularity requirements under the pre-amendment regulations. *Id*. As a result, more employees fall within the section 207(k) exemption and fewer are entitled to overtime compensation. *Id*.

In *McGavock*, the Fifth Circuit concluded the section 207(k) exemption applied to municipal firefighters who had graduated from fire academy and were called upon to extinguish, control, and prevent fires, but also spent twenty to fifty percent of their workweek engaged in dispatch duties. *See* 452 F.3d at 427. The firefighters conceded that they fell within section 203(y)'s definition, but argued that 29 C.F.R. § 553.212's requirements also should remain in effect because they did not conflict with section 203(y). *Id.* at 427. The Fifth Circuit disagreed, holding section 203(y) supplanted the earlier regulations. *Id*. In doing so, the Fifth Circuit noted the only purpose in enacting section 203(y) that appeared clear was Congressional intent for "all [EMTs] training as firefighters and attached to a fire department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies."[8]  *Id*.  Because the case involved firefighters who actively engaged in fire suppression activities, however, there was no need for the Fifth Circuit to specifically address their responsibility to do so.

The Eleventh Circuit has fully considered the meaning of responsibility under section 203(y) and determined county paramedics, who were trained and certified in fire suppression but whose workweek was devoted to providing emergency medical services, fell within the statute's definition.

---

[8] The Third Circuit has construed the purpose behind section 203(y) somewhat differently, indicating it was to "ensure firefighters who are cross-trained as emergency medical technicians, HAZMAT responders and search and rescue specialists, would be covered by the exemption even though they may not spend all of their time performing activities directly related to fire protection."  *Lawrence v. City of Phila.*, 527 F.3d 299, 312 (3d Cir. 2008) (quoting 145 Cong. Rec. 28, 520 (1999) (statement of Rep. Boehner)).

11

*See Huff,* 516 F.3d at 1279. The Court considered factors, including that the paramedics were equipped with bunker gear, sent to fire scenes, and required to be available to assist with fire suppression if needed. *Id.* The paramedics also were subject to discipline if they failed to follow orders, including orders to engage in fire suppression. *Id.* Looking at section 203(y)'s disjunctive requirement that the employee be engaged in the prevention, control, and extinguishment of fire *or* respond to emergency situations where life, property, or the environment is at risk, the Court concluded responsibility for fire suppression "does not imply any actual engagement in fire suppression" and "is a forward-looking affirmative duty or obligation that an employee may have at some point in the future." *Id.*; *see also Gonzalez v. City of Deerfield Beach*, 549 F.3d 1331, 1336 (11th Cir. 2008) (same).

The Third and Eighth Circuits, on the other hand, consider responsibility under section 203(y) to require "some real obligation" for fire suppression. In *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005), the Ninth Circuit determined that cross-trained firefighter/paramedics had no responsibility to engage in fire suppression under section 203(y) when they were not regularly dispatched to fire scenes, did not carry firefighting equipment and were not expected to wear fire protection gear, and were expected to perform only medical services.[9] *Id.* at 990. In *Lawrence*, fire service paramedics working for a municipal fire department were called to fire scenes only to provide medical services, were not certified or trained to the same extent as firefighters, and were assigned to ambulances that did not carry firefighting equipment. *See* 527 F.3d at 319. Although the fire commissioner testified that the fire service paramedics had been

---

[9] The DOL has applied the Ninth Circuit's analysis, finding paramedics, who performed fire suppression duties alongside their firefighting colleagues when medical care was not needed, had sufficient responsibility to qualify for the section 207(k) exemption. *See* U.S. Dep't of Labor, Wage & Hour Division, Wage and Hour Opinion Letter, June 1, 2006, FLSA2006-20, available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2006_06_01_20_FLSA.pdf (last accessed on September 25, 2020).

12

trained so they could engage in fire suppression if called upon to do so, the Court determined that they had no real responsibility to engage in fire suppression. *Id*. at 305, 319.

Although the facts of this case most closely resemble those in *Cleveland*, this Court is bound by *McGavock* for the principle that section 203(y) does not require any actual engagement in fire suppression. *See McGavock*, 452 F.3d at 427. And, there is no doubt plaintiffs were attached to a fire department. That, combined with their state certifications, gave them legal authority to engage in fire suppression. *See, e.g., Gonzalez v. City of Deerfield Beach*, 510 F. Supp.2d 1037, 1040 (S.D. Fla. 2007), *aff'd*, 549 F.3d 1331.

The fact that DFW required plaintiffs to hold firefighting certifications is some indication that they might be expected to engage in fire suppression. However, neither Chief McKinney's declaration nor any other evidence shows the circumstances, other than the odd training exercise, under which plaintiffs might have been required to engage in fire suppression prior to this lawsuit being filed.[10] Instead, they were assigned exclusively to MICUs or Trauma Unit 611, neither of which held any fire rescue or firefighting equipment. They were not dispatched to every fire incident and did not wear their bunker gear when responding to calls. Perhaps most importantly, the SOP setting out their procedures and responsibilities made no reference to fire suppression. Nor is there any evidence that plaintiffs would be disciplined for failing to engage in fire suppression. Without more, the Court finds DFW has not met its burden to show, or raised a genuine issue of material fact, that plaintiffs had even a forward-looking obligation or responsibility to engage in fire

---

[10] Plaintiff Robert Schauer testified that he supposed a chief could assign a "temporary duty assignment kind of thing" in a different division, but he had never worked such an assignment (Doc. 72-89, p. 26). Plaintiff Douglas Patterson appears to have worked one extra shift for the Special Operations team in the Fire Rescue division (Doc. 66-21). There is no evidence of what that shift entailed. Nor is there evidence of any other EMS division Firefighter working a shift or temporary duty assignment in another DPS division sufficient to raise a fact issue on their responsibility to engage in fire suppression.

suppression as EMS division Firefighters before this suit was filed.[11]  *Compare Regan v. City of Hanahan*, No. 02-16-cv-1077-RMG, 2017 WL 2303504, at *3 (D.S.C. May 26, 2017) (plaintiffs, who were almost always assigned to ambulances but, at various times, were assigned to fire trucks, were employees in fire protection activities).  Accordingly, plaintiffs are entitled to summary judgment that they were not employees in fire protection activities and the section 207(k) exemption does not apply.

### B. *Liquidated Damages: DFW's Good Faith Defense*

Both DFW and plaintiffs move for summary judgment on the issue of whether plaintiffs are entitled to recover liquidated damages.  An employer who violates the FLSA's requirement to pay overtime compensation "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  A district court has the discretion to decline or reduce a liquidated damages award if the employer shows that it acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA.  29 U.S.C. § 260; *Singer*, 324 F.3d at 823.  The Fifth Circuit has held that an employer "faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer*, 324 F.3d at 823 (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).  When an employer suspects that it is not in compliance with the FLSA, its violation cannot be said to have been in good faith.  *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016).  To claim good faith, an employer has "a duty to investigate potential liability under the FLSA." *Id*. (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)).

---

[11] DFW relies on *Lang v. City of Omaha*, 186 F.3d 1035, 1038–39 (8th Cir. 1999), for the proposition that plaintiffs' responsibility to render medical aid at fire scenes is directly concerned with the control or extinguishment of fires. *Lang*, however, was decided under former 29 C.F.R. § 553.210(a), which section 203(y) has supplanted.  *See McGavock*, 452 F.3d at 427.  DFW has cited no cases, and the Court has found none, that define fire suppression under section 203(y) to include rendering medical aid.

14

In support of their motion for summary judgment, plaintiffs simply assert DFW cannot meet the substantial burden of proving a good faith defense because there is no evidence DFW attempted to comply with the FLSA by consulting with counsel, the Department of Labor, or any other source of authority to determine whether its compensation practices were compliant.

DFW, however, has presented evidence that it made a good-faith attempt to comply with section 207(k).  Its legal counsel advised DPS personnel that it needed to comply with the statute's requirements in order to be eligible for the fire employee exemption (Doc. 65-3).  And, attaching a power point presentation, DFW asserts it communicated to EMS division Firefighters that they were partially exempt (Doc. 65-12).  The evidence, however, does not demonstrate the specific efforts DFW made to determine whether plaintiffs fell within the exemption.[12]

Taking DFW's evidence as true and drawing all reasonable inferences in its favor, the Court finds it has raised a genuine issue of material fact on whether it acted in good faith.  Accordingly, plaintiffs have not established they are entitled to summary judgment on the issue of liquidated damages.  The Court further finds that DFW has not presented evidence to establish that it acted in good faith as a matter of law; therefore, it also is not entitled to summary judgment.

C.  *Statute of Limitations*

DFW moves for summary judgment that a two-year statute of limitations applies to plaintiffs' claims.  A two-year statute of limitations normally applies to FLSA violations, but the statute of limitations is one year longer if a violation is willful. 29 U.S.C. § 255(a).  A violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hoenninger v. Leasing Enterprises, Ltd.*, 803 F. App'x 756,

---

[12] The Court realizes that authority providing guidance on when an employee is engaged in fire protection activities is limited and not exactly well-settled.  And, as discussed above, plaintiffs fell within all but the responsibility prong of the section 203(y) definition.  However, to be entitled to summary judgment, DFW has the burden of showing it took steps to investigate potential liability under the FLSA.

15

760 (5th Cir. 2020) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Mere negligence or an incorrect, but good-faith, assumption that a pay plan complies with the FLSA does not suffice. *McLaughlin*, 486 U.S. at 135 n. 13. An employer acts willfully if it "kn[e]w [its] pay structure violated[d] the FLSA or ignore[d] complaints brought to [its] attention." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (citing *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 & n.24 (5th Cir. 2009)). An employee bears the burden of demonstrating willfulness, which is a fact issue. *See Mohammadi*, 605 F. App'x at 332.

DFW asserts its classification of plaintiffs as employees engaged in fire protection activities cannot be considered a willful violation of the FLSA, relying on its evidence that it took steps to comply with section 207(k). Further, plaintiffs clearly fell within the majority of the section 203(y) definition and, as shown above, the law has not provided much guidance regarding when paramedics or EMTs, like plaintiffs, are employees engaged in fire protection activities.

Plaintiffs assert the fact that DFW has been alleged to have violated the FLSA in a previously-filed lawsuit is evidence of willfulness. The allegations in that case, however, involved whether DFW properly combined hours it assigned to civilian security officers with hours assigned to the officers by contractors to determine overtime eligibility. *See Frazier v. Dallas/Fort Worth International Airport Board*, No. 3:16-cv-2657-S (N.D. Tex.). The Court finds the allegations in that case, which was dismissed pursuant to an agreed stipulation, are clearly unrelated to those at issue in this case and do not show willfulness as to DFW's determination that the section 207(k) exemption applied.

Plaintiffs also point to some evidence that a non-plaintiff EMS employee raised to an EMS division chief whether the exemption was being properly applied in approximately 2007, and the chief refused to discuss it (Doc. 79-2, pp. 60-61; Doc. 79-3, pp. 17-19). Although the better course

16

clearly would have been to discuss the issue, there is no evidence that any plaintiff, or any other employee, lodged any specific complaint about DFW's overtime payments under section 207(k) until this suit was filed.

Viewing all the evidence and drawing all reasonable inferences in the light most favorable to plaintiffs, the Court finds plaintiffs failed to provide sufficient evidence to show the existence of a genuine issue of material fact that DFW either knew or showed reckless disregard for whether its conduct was prohibited by the statute. Accordingly, DFW is entitled to summary judgment that the two-year statute of limitations applies to plaintiffs' claims.

*D. Incentive Payments*

Without citation to any evidence, plaintiffs move for summary judgment that DFW "was required to include paramedic incentive payments when calculating [p]laintiffs' regular rate." An employee bears the burden of proving each element of a FLSA claim. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001). Thus, plaintiffs must show DFW should have included any incentive payments in their regular rates, including that the payments were not discretionary according to the statute's terms. *See id.* (employer had burden of proving employee fell within claimed exemption category, but employee had burden of proving employer failed to comply with section 207(a) overtime payment requirement); 29 U.S.C. § 207(a), (e)(3). Without any evidence on the issue, plaintiffs cannot be entitled to summary judgment. *See* FED. R. CIV. P. 56(c). Further, DFW presented evidence that, where plaintiffs were entitled to overtime pay in a given pay period, they received an overtime adjustment to compensate them for the increased regular rate for

17

that pay period based on incentive pay received (Doc. 65-30). Accordingly, the Court must deny plaintiffs' summary judgment motion on this ground.[13]

## CONCLUSION

Because plaintiffs are not employees in fire protection activities, their motion for summary judgment (Doc. 67) is **GRANTED** to the extent that they are not subject to the increased overtime threshold of section 207(k). Plaintiffs' motion for summary judgment is **DENIED** in all other respects.

DFW's summary judgment motion (Doc. 63) on the statute of limitations for plaintiffs' claims is **GRANTED**; the motion is **DENIED** in all other respects.

**SO ORDERED**; signed September 28, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[13] In a footnote in the brief to its summary judgment motion, DFW asserts it is entitled to summary judgment on this issue because "such pay is omitted from Plaintiff's Motion for Conditional Certification and Notice to Putative Class Members" (Doc. 64, p. 27). Both the motion and notice, however, broadly apply to EMTs or paramedics who were paid hourly but were not paid time-and-a-half their regular rate for all hours worked over forty (40) in each workweek" (Doc. 23; Doc. 23-1). The Court finds plaintiffs' claim that incentive pay was not included in their regular rates for purposes of calculating their overtime rate falls within that language and, thus, DFW is not entitled to summary judgment on this issue.